## Herbert Crawford and Lillian Crawford v. State Highway Board

[285 A.2d 760]

No. 151-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 7, 1971

*Black & Plante,* White River Junction, for Plaintiffs.

*Downs, Rachlin & Martin,* St. Johnsbury, for Defendant.

**Shangraw, J.** This is a condemnation-valuation case. The State Highway Board acquired land and buildings of plaintiffs located at the intersection of Vermont Routes 118 and 14. Plaintiffs resided in one of the buildings not taken and conducted a used car business on the surrounding land. Following the taking, plaintiffs relocated the used car business on another site.

Plaintiffs specifically disclaimed "business loss", as such, within the meaning of 19 V.S.A. § 221(2), and the case was tried and submitted solely on the issues of damage for land and buildings taken, and damage to the remaining land.

The premises, prior to the taking, consisted of a one-story garage building situated at the southwesterly corner of the intersection and on the southerly side of Route 14. There was

also a large house, land and other buildings located on the northwesterly corner of the intersection, and a smaller house and land located northerly of Route 14 but westerly of the intersection.

The overall acreage involved, prior to condemnation on July 11, 1967, was 3.1 acres. The land southerly of Route 14, referred to as the garage, was completely taken and the taking on the other two parcels was but partial. The actual taking by reason of the relocations of the highways in question amounted to about 1.67 acres of land and included the garage building, land, a spring, pipeline and two sewer lines.

The case was tried by jury resulting in a general verdict of $60,000.00 consisting of the following special verdicts.

| | |
|---|---|
| Damage for land and building taken | $45,000.00 |
| Damage to land remaining | $15,000.00 |

Defendant filed a motion to set aside the verdict and for a new trial. This motion was denied.

$30,875.00 had been previously paid plaintiffs by the State of Vermont leaving a balance of $29,125.00. Following a computation of interest and taxation of costs by the trial court, judgment was entered on October 30, 1970, for the plaintiffs to recover the balance of $35,831.95. No dispute arises as to the accuracy of the foregoing computation.

Defendant has appealed from the lower court's denial of the motion to set aside the verdict, for a new trial, and from the judgment order.

In seeking a reversal the defendant first claims that the trial court erred in permitting evidence of plaintiffs' business profits even though plaintiffs specifically disclaimed "business loss" as an issue.

Plaintiffs employed as experts on the issue of damages two appraisers, William Orcutt and Thomas Candon. Herbert Crawford, a plaintiff, also testified as to damages.

Mr. Orcutt testified, without objection, that the Crawford property is located in a commercial neighborhood and a number of businesses, including the Crawfords, had been conducted at this intersection for a number of years. This witness also testified, that after the taking, it would be impractical to continue the Crawford automobile business at this location.

On direct examination Orcutt testified that he used the market data approach in arriving at his opinion that plaintiffs were damaged by the taking and the severance in the total amount of $74,000.00, of which amount $69,000.00 was for the property actually taken.

In cross-examination, Orcutt stated that he also used the reproduction or cost approach in making his appraisal of the garage property. He testified that it would cost about $45,000.00 to build the garage, and valued the lot on which the garage was located at $39,937.00. This witness depreciated the garage building down to $27,000.00. $7,500.00 was added for improvements, paving and spring, making a total of $74,437.00, which sum he rounded out at $75,000.00.

In referring to the location of plaintiffs' business at the intersection, on cross-examination Mr. Orcutt stated: ". . . and I point out this is on an intersection which historically has been a base of business here, totally occupied by commercial business, on all four corners, and this business has been run for many years under the same management and this is at an intersection of a main highway with a good commercial site."

Plaintiffs' second appraiser, Thomas Candon, testified as to the volume of gasoline sales at the garage and the operation of the garage and the used car business. He also had access to, and considered plaintiffs' business income tax returns for the years 1965, 1966 and 1967. These returns revealed gross receipts for 1965 of $258,521.23. The gross receipts for 1966 were $253,579.87, and for 1967, $256,913.91. The average net profit for the three years amounted to $14,450.00.

In making his appraisal of plaintiff's damages, Candon testified that he used three approaches,—that is, market data, cost data, and income data. Candon testified in detail how, and in what manner, he considered and applied all three approaches in arriving at the damage issue. The net result was that he considered the fair market value of the property before the taking was $95,740.00 and that the fair market value to the remaining property to be $20,100.00, resulting in a damage figure rounded out at $76,000.00.

Herbert Crawford, a plaintiff-owner, testified that the damages amounted to $105,000.00.

The two appraisers for the State of Vermont, Messers Gary Filteau and Michael Jones, testified that plaintiffs' damages were $34,500.00 and $32,150.00 respectively.

Defendant challenges Candon's appraisal on the basis that the capitalization of income approach should not have been considered by Candon as an element in determining the market value of the property in question. During trial the State seasonably objected to Candon's testimony as it related to this phase of the evidence. It is claimed by the State that this testimony bore upon an immaterial issue, i.e., "business loss", even though it was offered on the issue of real estate valuation. It is urged that this evidence invited the jury to consider lost profits as an element of plaintiffs' damages.

Following objections made by defendant concerning the income derived by plaintiffs from their business, attorney for plaintiffs made the following statement:

> There isn't any claim here, as far as we know, by the plaintiffs that the business was taken from them. What we're claiming is that the site was taken and Mr. Candon, as we understand it, and we would indicate that his testimony will tend to show that the income approach here was necessary for him to arrive at some cost figures, value figures, as far as these buildings are concerned. There's been already cross-examination and direct examination in connection with the three various methods of arriving at valuations of property, and this witness is testifying as to the second method; mainly the income approach whereby he arrived at a certain conclusion, as we say material, is germane to the point of issue.

Later, Mr. Crawford was recalled as a rebuttal witness and during his examination the transcript reveals the following:

> Mr. Rachlin: Your Honor, I think it might be helpful on the record if any claim being made here of business loss or any claim the business has been taken.
>
> Court: Go ahead.
>
> Mr. Plante: The business was taken; Mr. Crawford has built a new site, if this is what I understand my brother is talking about.

Mr. Rachlin: My question is, is statutory business loss being claimed here?

Mr. Plante: We are not claiming business loss as such for the very simple reason, I don't understand the Gibson case, Your Honor.

At the outset of the charge, the court called attention to 19 V.S.A. § 221 (2), and in commenting on recoverable damage, stated:

Damages resulting from the taking or use of property under the provisions of this chapter shall be the value for the most reasonable use of the property or right therein, and the direct and proximate lessening in the value of the remaining property or right therein. That is the law, and that is the principal rule you should have in mind during the course of your deliberations here. Put another way, the amount of compensation which the plaintiff is entitled to receive is the difference between the fair market value of his property before the taking on July 11, 1967, and the fair market value after such taking, based on the most reasonable use of the property.

The court further advised the jury by saying: "Now, there is no business loss claimed in this case, and therefore, you will not consider such."

Near the conclusion of the charge the court reiterated the rule of damage to be considered by the jury as being ". . . the difference in the fair market value of the property before the taking, and the value after the taking, considering the most reasonable and available use to which the property can be put."

Under the provisions of 19 V.S.A. § 221 (2) the legislature decreed that a landowner, whose property contains a going business, shall be compensated, not only for the land taken, but he shall be entitled to a further award to the extent of the direct and proximate lessening in the value of the remaining property or right therein "and the business thereon."

Here, the plaintiffs are not seeking to recover for business loss. This element of damage was unqualifiedly withdrawn from the jury's consideration by the court's charge.

Defendant admits in its brief that income produced from real estate itself—rentals, for example—are an acceptable basis for capitalization in attempting to place an economic value on the real estate. It is urged that income from a business which is merely conducted on real estate is admissible only where it is claimed the business itself is taken. See *Fiske* v. *State Highway Board*, 124 Vt. 87, 92, 197 A.2d 790 (1964).

Defendant cites textbooks and manuals wherein it is stated that the income approach relates to income produced directly by the real estate. It cites other authority where the courts generally exclude evidence of business profits, past and anticipated, where the issue is the value of real estate. *United States* v. *Toronto, etc., Nav. Co.*, 338 U.S. 396, 70 S.Ct. 217 (1949); *Cobb* v. *Boston*, 109 Mass. 438 (1872); *Ranlet* v. *Concord R.R. Corp.*, 62 N.H. 561 (1883).

The general theme of defendant's claim is that profits of a business are too uncertain, and depend on too many contingencies to be safely accepted as any evidence of the value of property.

■ Just compensation for the property taken is construed as being reimbursement of the fair market value of the property taken, plus the damage suffered by the remainder. No hard-and-fast rule may be laid down applicable to every case as to what elements properly enter into consideration in determining the market value of property sought to be condemned. *Record* v. *State Highway Board*, 121 Vt. 230, 240, 154 A.2d 475 (1959).

■ Three basic methods, or combinations of them, have been generally used in appraising the fair market value of real property. These are the cost approach, *Rome* v. *State Highway Board*, 121 Vt. 253, 255, 154 A.2d 604 (1959); *Smith* v. *State Highway Board*, 125 Vt. 54, 57, 209 A.2d 495 (1965); the income approach, *Record* v. *State Highway Board*, *supra*, 121 Vt. at 240, and the market data approach, *Children's Home* v. *State Highway Board*, 125 Vt. 93, 98, 211 A.2d 257 (1965).

Mr. Candon did not rely solely or primarily on the capitalization of profits from the car business but only as one of the

variables in attempting to arrive at a fair market value of the total real estate involved. More specifically, he combined the income approach with the cost approach when estimating the value of the garage building and lot at $63,500.00, which was less than the cost approach made by Orcutt of $75,000.00. This witness made it perfectly clear that he considered the business profits to determine the market value of the property and not of the business itself. Plaintiffs' counsel also pointed out that evidence of profits was introduced as bearing upon the market value of the property in question, and that no claim was made that the business was taken by the State.

The record establishes that the net income from the plaintiffs' used car operation was not received as an independent element of damage. It was received solely to show the value of the property for the commercial use to which it had been applied.

Moreover, disregarding the income approach, Candon valued the garage and land taken at $67,740.00. The special verdict for this land and building was $45,000.00.

Mr. Filteau, one of the appraisers for the State, agreed that a prospective buyer would probably want to know the value of business being done at plaintiffs' location.

It is, of course, fundamental that in order for an error to be grounds for reversal it must be shown that it is prejudicial. Also, if the verdict can be justified on any reasonable view of the evidence, it must stand. *Jackson* v. *Rogers*, 120 Vt. 138, 150, 134 A.2d 620 (1957). The burden is on the excepting party to show reversible error and the record is to be construed against him. *Canfield* v. *Hall*, 121 Vt. 52, 56, 147 A.2d 886 (1959).

The record demonstrates that the plaintiffs' property was located at a valuable business site. The evidencing of its suitability for commercial use was proper to be developed through testimony relating to the business success generated by its geographical location.

In referring to the intersection where plaintiffs' property was located, plaintiff, Herbert Crawford, was asked by his attorney to "describe the traffic flow past this area." Crawford responded by testifying that "It was quite heavy. I understand

it's forty-six hundred cars a day." Defendant objected on the ground that the statement of Crawford was hearsay. The court permitted the answer to stand.

Defendant concedes that the amount of traffic flowing by a place of property has a bearing on the value of property, where, as here, it was used as commercial property.

Defendant's claim of error on this point appears to be two-pronged. It first complains that the answer given by Crawford was inadmissible as hearsay evidence. From what source he obtained the traffic flow information has not been called to our attention.

Defendant's further objection to the reception of his testimony is the absence of evidence that Crawford took into account such traffic flow figures in arriving at his claimed damage of $105,000.00.

■ An owner of land condemned by the State for highway purposes is a competent witness to testify as to its value. *Bissonnette* v. *State Highway Board,* 124 Vt. 424, 427, 207 A.2d 151 (1965). Such owner, in testifying as to the value of property, may consider facts and information received from others. *Gibson Estate* v. *State Highway Board,* 128 Vt. 47, 258 A.2d 810, 813 (1969). Whether the traffic flow count, as testified to by Crawford was correct or not, the fact remains that this was a busy intersection contributing to business conducted at this point. There is no occasion to disturb the verdict by reason of Mr. Crawford's testimony concerning the traffic flow at the intersection in question.

■ Lastly, the defendant asserts that the court abused its discretion in admitting, over its objections, construction photographs showing the Crawford residence located on the edge of a precipice or chasm. This Court has said that the admissibility of photographs is largely within the trial court's discretion and not ordinarily reviewable. *Colson* v. *State Highway Board,* 122 Vt. 392, 393, 173 A.2d 849 (1961).

Defendant contends that such photographs, in the hands of the jury, would lead them to speculate about the ultimate position of the highway relative to the house, and in particular, the possibility that occupants of the house would in the

future be in danger of stepping out of this dwelling into a yawning cavern.

The evidence reveals that a fence was going to be constructed at or near the brink of the cavern and consequently any chance that the occupants of the house would inadvertently step therein would be impossible.

The level of the finished road was obviously relevant in that it bore directly on the question of damages to the remainder of the Crawford property. Photographs showing what level the road would have, with reference to the Crawford residence, can hardly be said to be prejudicial to the defendant. Moreover, counsel for defendant indicated to the court that he had no objection to having the photographs shown to the jury for this purpose.

The verdict is supported by the evidence and justifies an affirmance of the judgment.

*Judgment affirmed.*