# In re Appeal of Condemnation Award to 89-2 Realty

[566 A.2d 979]

No. 87-556

Present: Allen, C.J., Peck, Gibson and Morse, JJ., and Keyser, J. (Ret.), Specially Assigned

Opinion Filed September 1, 1989

*Mark W. Roberts* of *Bloomberg & Oettinger*, Burlington, for Plaintiff-Appellant.

*Richard F. Peterson, Jr.* of *Spokes, Foley & Stitzel*, Burlington, for Defendant-Appellee.

**Peck, J.** Plaintiff appeals a condemnation award on the issue of damages. See 19 V.S.A. § 501(2) (defining damages) (formerly 19 V.S.A. § 221(b)). Two issues are presented: (1) whether the trial court erred when it did not award separate compensation for business loss on the remaining parcel; and (2) whether the trial court erred when it decided that plaintiff was not damaged by the rerouting of access lanes to the property. We remand for further findings.

Plaintiff corporation owns a 100,000 square-foot shopping center on 6.88 acres fronting Williston Road in South Burlington. In January 1986 the City of South Burlington condemned a strip of .19 acres of plaintiff's parking lot along the road in order to widen the road. Before construction, the existing lot contained 163 parking spaces and two-way traffic lanes in front of the stores. If redesigned to maximize parking, the lot could have held as many as 211 cars, and the condemned parcel would have represented thirty spaces. As part of the road project, the City also changed the access to the property by consolidating the ingress and egress. Concerned that the post-construction parking arrangement would cause traffic congestion in the lot, plaintiff negotiated an agreement with the City for an additional egress from the lot. The additional exit consumed ten spaces more, under the maximized parking design. After the road construction and improvements, the lot has 171 parking spaces (eight more than it had previously), and improved access, but the parking spaces are narrower. In addition, the overall land-to-building ratio, described in feet, has decreased from 2.9:1 to 2.8:1.

The compensation award of $40,300 by the City Council was appealed to the superior court. 19 V.S.A. § 513. After a bench trial, the court increased the award to $53,714, which reflected additional "costs to cure" (i.e., related construction costs, such as sign changes, restriping, and median islands), including $28,735 to pay for the land, and $3,000 for temporary and permanent termination of related rights. Plaintiff argues, however, that the court did not include compensation for the diminished value of the business on the remaining parcel.

Plaintiff first asserts that 19 V.S.A. § 501(2) requires that the award reflect not only the fair market value of the land taken for public purposes, but also "the direct and proximate decrease in the value of the remaining property ... and the

business on the property." Plaintiff advances several theories to describe the impact on the retail property: that the market value of the shopping center has been diminished by the change in the ratio of land to building area and that the rental value of the property is reduced because its leases are partially dependent on a percentage of retail sales, which will decrease due to parking limitations.

■■ "Just compensation for the property taken is construed as being reimbursement of the fair market value of the property taken, plus the damage suffered by the remainder." *Crawford v. State Highway Bd.*, 130 Vt. 18, 24, 285 A.2d 760, 764 (1971). The rule of compensation for land taken by eminent domain includes compensation for business losses where applicable. *Penna v. State Highway Bd.*, 122 Vt. 290, 295, 170 A.2d 630, 634 (1961). Compensation for business losses is statutory in Vermont, one of the few states to recognize loss to the individual over and above the value of the land. Cf. 42 A.L.R.3d 148, § 4 (1972). Compare, for example, the New Jersey court's directive in *State v. Cooper Alloy Corp.*, 136 N.J. Super. 560, 568, 347 A.2d 365, 369 (App. Div. 1975): "[Do] not include losses or costs that are incidental to a taking, such as loss to or destruction of good will, loss of profits, inability to relocate or frustration of the condemnee's plans. These items are generally held not to be directly attributable to the realty, but rather peculiar to the owner."

■■ In Vermont, the value of the land taken at its highest and best use is first calculated, and then, *if* "'the plaintiff has suffered a loss to his business which has not necessarily been compensated for in the allowance made for his land,'" separate damages must be awarded for business loss.* *Sharp v. Transportation Bd.*, 141 Vt. 480, 486, 451 A.2d 1074, 1076 (1982) (quoting *Penna*, 122 Vt. at 293, 170 A.2d at 633). Compensation for business losses, however, is not the same as valuation of the property through consideration of the profits

---

* While the landowner may recover for the full magnitude of business loss, each case turns on its own facts. Where the value of the land necessarily reflects the value of the business upon it (as is often the case with farming) compensation for both the business loss and land taken would effectuate a double recovery for a single loss. *Penna*, 122 Vt. at 293, 170 A.2d at 633; see *State v. Henry*, 468 So. 2d 1262, 1267 (La. Ct. App. 1985).

made by the business. See, e.g., *Crawford*, 130 Vt. at 24–25, 285 A.2d at 764 (plaintiff had waived his rights to business losses, valuation based on previous years' returns upheld); see also *State v. Hollis*, 93 Ariz. 200, 204, 379 P.2d 750, 752 (1963). Here, plaintiff requests damages based on the market value of the property.

The parties stipulated that the .19 acres taken by eminent domain was "valued at" $28,735. We have no indication from the record what factors were considered in the stipulated value. From the cross-examination of plaintiff's expert we note that comparative land values of $3.50 per square foot were used to calculate a similar figure, but the trial court made no finding regarding the amount, other than to note that it represented "market value" at the highest and best use. The trial court found that because the highest and best use was synonymous with the current use of the parcel, the price stipulated was its value to the business and no other damages for lost business need be calculated.

That conclusion is, however, erroneous. Because the parties stipulated to the amount of "value" without further description of the calculation, we can only speculate what that figure included. Moreover, it is unclear whether losses to the shopping center demonstrated by plaintiff are "compensated for in the allowance made for [the] land." *Penna*, 122 Vt. at 293, 170 A.2d at 633. While it is mandatory that the court award compensation for business losses, 19 V.S.A. § 501(2), plaintiff has not made lost profits the focal point of its appeal. Instead, plaintiff requests only that it be compensated for the change in the fair market value of the retail business on the remainder.

It appears that the parties followed the practice suggested in *Sharp*, and calculated the fair market value of the land condemned separately from the impact on the remainder. The thrust of the litigation was the consequences of diminished parking on the value of the business. The court's approach assumes that parking is fungible, as if the land with parking spaces on it can be replaced elsewhere, and that the reduced land-to-building ratio has no effect on the marketability of the remainder. The court made no findings regarding the alleged diminished value of the remainder.

As the court recognized, however, "a shopping center lives on parking." If, for example, the taking had diminished the parking lot by all but one space, the effect on the retail business would be disastrous and the market value of the parking spaces taken would not compensate the owner for the destruction of the remaining business.

Defendant argues that the value of the property has been determined and stipulated, and that the amount plaintiff seeks to have added is merely another way of calculating the value of the same piece of property. It further argues that the "market value rule" is applicable, and ignores the language of 19 V.S.A. § 501(2). *Penna* specifically sets out the requirements of the rule, that

> the owners shall be compensated: (1) for the value of the land taken, (2) for the value of the loss of business thereon, and (3) for damage resulting to the balance of the land remaining to the owners where an entire parcel is not taken.

*Penna*, 122 Vt. at 292, 170 A.2d at 632. On the facts of this case it appears that the third step is missing, although it is difficult to be certain without knowing the nature of the stipulated value. This third step is known as "severance damages," defined as "the difference between market value of the remaining property immediately before and after the taking." *Henry*, 468 So. 2d at 1267.

The fair market value of the remaining real estate in its existing business use may be determined by considering the effect of the taking on the business through income method appraisals. See *Crawford*, 130 Vt. at 24–25, 285 A.2d at 764; see also *State v. Hollis*, 93 Ariz. at 204, 379 P.2d at 752 ("If the property is rented for the use to which it is best adapted, the actual rent received, capitalized at the rate which local custom adopts for the purpose, forms one of the best tests of value ...."). Plaintiff attempted such an approach but it was disregarded by the court. Testimony by plaintiff's expert described the capitalized income method of appraising the shopping center before and after the taking. Such testimony suggests that severance damages were not considered in the stipulated value set for the condemned property.

█ Plaintiff's appraiser attempted to demonstrate that the value of the property, based on the income produced by the use, would decline due to the decrease in parking. He testified that the difference in market value of the remainder amounted to $43,085 for the .19 acres taken, and more than that if the court considered damages due to the parking taken to add another egress. The sum alleged is not compensation for the property taken, but rather compensation for the result of the taking on the remainder. Plaintiff's expert supported his conclusion through evidence of comparable properties and percentage reduction in net return on the leases. Perhaps the court found these estimates were not credible. However, the court did not base its conclusions on the credibility of the evidence, instead concluding as a matter of law that the requested allowance constituted double compensation.

"The nature of the business and the manner in which the plaintiff marshals his proof will be determinative as to whether the court will be justified in submitting the business loss as a separate item." *Penna*, 122 Vt. at 293, 170 A.2d at 633. Plaintiff's evidence of severance damages was sound enough that the reduced value of the remainder should have been considered. By failing to make a finding on this point, the court withheld its discretion. While we remand for further findings regarding the allowance awarded, we look skeptically on plaintiff's claim that the impact of the taking, which in fact *increased* the number of parking spaces, reduced the income-producing capacity of the stores on the remaining real estate.

█ The second issue raised by plaintiff's complaint, that the reconfigured access lanes to the property caused damage to the value of the property and that the additional egress lane required the taking of ten additional parking spaces, is without merit. The additional egress was requested by plaintiff, and the spaces used to accommodate it were not a taking by the government. It was within the trial court's discretion to determine that the value of the property was actually enhanced by the improved access lanes.

*Cause remanded for further consideration consistent with this opinion.*