## Francis Raymond, et al. v. Chittenden County Circumferential Highway

[604 A.2d 1281]

No. 90-189

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed February 7, 1992

*Paul D. Jarvis* of *Jarvis & Kaplan,* Burlington, for Plaintiffs-Appellants.

*Jeffrey L. Amestoy,* Attorney General, and *Scott A. Whitted,* Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Dooley, J.** This is a condemnation action involving plaintiffs' land in the Town of Essex, which is being taken by the State for the Chittenden County Circumferential Highway (CCCH).

Plaintiffs appeal from the trial court's damage award, arguing that the court improperly valued the land, failed to include business losses, and failed to include an award for plaintiffs' litigation costs. We affirm.

The land consists of 50.07 acres which plaintiffs purchased in 1974 as an investment for later development. In April 1984, plaintiffs began to work on developing the property. In November 1985, they hired an engineering firm to draft a set of development plans. These plans showed a subdivision containing 87 residential units, 35 single-family homes and 52 condominiums. Plaintiffs then went before the Essex Planning Commission and received a permit to proceed with their development. They sought an Act 250 permit, but their application was denied by the district environmental commission. They believed that the denial occurred because of the CCCH, but they submitted no evidence on that question to the court.

Plaintiffs ceased their development plans when it became known that the land was in the path of the CCCH. They did no site work, sought no financing and did not solicit buyers. After the State moved to acquire 27.71 acres of their property, plaintiffs hired a contractor to estimate the cost of their plans. The contractor proposed to build the infrastructure for the development for $1,323,075. This bid was submitted in August 1989, in preparation for the condemnation trial.

This action began as an inverse condemnation case in which plaintiffs alleged that the State's planning activities had effectively taken their property. It was later converted into a normal condemnation proceeding in which the Vermont Agency of Transportation awarded plaintiffs $1,285,000 for the land taken for the CCCH. Plaintiffs appealed to superior court pursuant to 19 V.S.A. § 513(a). The parties stipulated that the land should be considered as fully permitted for plaintiffs' proposed subdivision development. The court found that the value of the land condemned by the State was $1,511,200, based on a before-taking value of $1,531,200 and an after-taking value of $20,000. It further found that plaintiffs had suffered no compensable business loss. The court awarded plaintiffs $226,200, the difference between its finding of value and the award of the Vermont Transportation Board, plus costs of $79.39 and interest.

Plaintiffs first argue that the court erred in valuing the land according to its "wholesale" rather than "retail" value. This ar-

gument is based on the testimony of plaintiffs' appraiser who reported three values for the property, depending on its development state. The first value, $1,609,000, reflected the state of the property at the time of condemnation—that is, as raw land, permitted for development, and sold as one parcel. The second value, $1,974,000, reflected his estimate of the net value of the land if the infrastructure, such as roads and sewer, were in place but the property was still sold as one parcel. The third value, $2,572,000, reflected his estimate of the net value of the land if the infrastructure were in place and it was sold by plaintiffs as building lots over a five-year period. The State's appraisers evaluated the property as raw land, permitted for development, and sold as one parcel. The court also considered the property as raw land, and adopted a value between that asserted by the State's appraiser, and the first value presented by plaintiffs' appraiser. Plaintiffs argue that the court should have considered the property as if the infrastructure had been developed.

■ An owner whose property is taken by condemnation is entitled to the "value for the most reasonable use of the property," along with compensation for business loss and the reduced value of any remaining property. 19 V.S.A. § 501(2). The value referred to is fair market value when the land is taken at its highest and best use. *In re Condemnation Award to 89-2 Realty*, 152 Vt. 426, 429, 566 A.2d 979, 980 (1989). The parties agree here that the highest and best use of plaintiffs' land is as a housing development.

Although our published cases do not address the specific issue plaintiffs raise, our decision in *Childrens' Home, Inc. v. State Highway Board*, 125 Vt. 93, 211 A.2d 257 (1965), points to a resolution. In *Childrens' Home*, the property had a ravine through it, but the owner argued that its value should have been considered in light of a contemplated commercial development, because an adjoining landowner had promised to fill in the ravine. The Court first stated the general valuation rule as follows:

> The landowner is entitled to the value of the parcel appropriated together with the difference in the fair market value of the remaining property immediately before, and immediately after, as a consequence of the taking.

*Id.* at 95, 211 A.2d at 260. We went on to hold that on the date the property was taken it contained the ravine, and that its value was enhanced by its "commercial potential," but "was not subject to further increment by the prospect of low development costs which were never experienced in fact." *Id.* at 96, 211 A.2d at 260. In holding that the property could not be considered as if the ravine were filled in, the Court concluded:

> Perhaps the highway project frustrated the plaintiff's plans for future development of the frontage. If so, that was not the appropriation of a compensable interest in the land taken, within the reach of constitutional guaranties.

*Id.* In cases following *Childrens' Home,* we have emphasized that valuation must occur as of the date of the taking. See, e.g., *Jensen v. State,* 136 Vt. 200, 202, 388 A.2d 421, 422 (1978); *Thorburn v. State Highway Bd.,* 130 Vt. 11, 13–14, 285 A.2d 755, 757 (1971).

The rule that follows from these cases is that the value must be set as of the date of condemnation when the land is in a raw state without the infrastructure. As in *Childrens' Home,* the condemnation of plaintiffs' land frustrated their development plans, but the plans themselves are not compensable. We note that our position is consistent with those taken by other courts in similar situations. In general, courts have held:

> [R]aw land as such, with little or no improvement or preparation for subdivision may not be valued as if the land were in fact a subdivision. Thus, the "lot method" approach to valuation may not be used. The measure of compensation is not the aggregate of the prices of the lots into which the tract could be best divided, since the expense of clearing off and improving the land, laying out streets, dividing it into lots, advertising and selling the same, holding it and paying taxes and interest until all lots are disposed of cannot be ignored, and is too uncertain and conjectural to be computed. . . .
>
> The accepted rule for the evaluation of such land, therefore, is that the land will be considered in its present condition as a whole, with consideration given to any increment or enhancement in value due to the property's present adaptability to subdivision development.

4 J. Sackman Nichols on Eminent Domain § 12B.14[1][a], at 12B-163–168 (rev. 3d ed. 1990) (footnotes omitted).

It is not unfair to value this property as raw land that can be used for a housing development. Its development potential is contained in this value. Plaintiffs can take the proceeds of the condemnation and buy an equivalent piece of land and develop it. The difference between the "retail" and "wholesale" values of the land, as plaintiffs have termed them, involves work and risk, which plaintiffs neither expended nor assumed.

Plaintiffs' second argument relates to the first. In this argument, they seek the increment to their appraiser's third valuation. That value, set by the appraiser at $2,572,000, assumes that plaintiffs completed the infrastructure and then sold the lots individually for housing development. Plaintiffs argue that the increment to this value is compensable because it reflects a business loss which is specifically allowed under 19 V.S.A. § 501(2).

Vermont is one of the few states to recognize business loss as an item of damage in a condemnation proceeding. See *In re Condemnation Award to 89-2 Realty*, 152 Vt. at 429, 566 A.2d at 980. To be compensable, the business loss must be one "'which has not necessarily been compensated for in the allowance made for [the] land.'" *Id.* (quoting *Sharp v. Transportation Bd.*, 141 Vt. 480, 486, 451 A.2d 1074, 1076 (1982)). It is allowed only with respect to a "fixed and established business." *Sharp*, 141 Vt. at 486, 451 A.2d at 1076. For example, in *Green Mountain Marble Co. v. State Highway Board*, 130 Vt. 455, 462, 296 A.2d 198, 203 (1972), we held that no business loss was compensable for a marble quarry that had been idle for many years, despite the evidence that marble that could be quarried was present.

Plaintiffs do not meet the requirements for a business loss award. They do not have a fixed and established business developing land. Moreover, it is impossible to distinguish business loss from the value of the land because the nature of the business is the sale of the land. Thus, plaintiffs are necessarily compensated in the value of the land for their work in designing the subdivision and obtaining permits. Further compensation would be either duplicative or for business activity that did not exist.

■ Finally, plaintiffs argue that the court erred in failing to award them attorney's fees and other litigation expenses under either 19 V.S.A. § 512(b) or § 514. Section 512(b) applies, however, only where "the plaintiff prevails against the state in an action for inverse condemnation." Although this began as an inverse condemnation action, it became an appeal of a transportation board condemnation award made pursuant to 19 V.S.A. § 511, as if the inverse condemnation action had never been brought. Thus, plaintiffs have not prevailed in an inverse condemnation action and are not entitled to the expenses they seek pursuant to § 512(b).

The availability of costs in a condemnation action is governed by 19 V.S.A. § 514, the other statute on which plaintiffs rely. That statute allows the court to "tax costs," but does not also allow the award of "disbursements and expenses, including reasonable attorney, appraisal and engineering fees," as is contained in § 512(b). Moreover, the allowance of reasonable attorney's, appraisal and engineering fees for inverse condemnation actions is a relatively recent addition to the statutes that cannot be taken as defining costs for condemnation actions. See 1971, No. 218 (Adj. Sess.), § 1 (adding the provision that is currently 19 V.S.A. § 512(b)). Thus, § 514 covers only the traditional concept of costs, which does not include the items plaintiffs seek. See *In re Gadhue*, 149 Vt. 322, 327, 544 A.2d 1151, 1153–54 (1987); 32 V.S.A. § 1471; V.R.C.P. 54(d). The trial court properly awarded the allowable costs.

*Affirmed.*