## In re Munson Earth Moving Corporation

[737 A.2d 906]

No. 97-327

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Corsones, D.J., Specially Assigned**

Opinion Filed August 13, 1999

*Phillip C. Linton* and *Leslie L. Linton* of *Doremus Associates,* Burlington, for Plaintiff-Appellant.

*William H. Sorrell,* Attorney General, and *Scott A. Whitted,* Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Skoglund, J.** Appellant Munson Earth Moving Corporation appeals the Environmental Board's denial of its application for a Vermont land use (Act 250) permit for development of a residential subdivision on land it owns in Colchester, Vermont. The Board based its denial on the conclusion, under Act 250 criterion 9(K), that granting the permit would, endanger the public investment in the proposed Chittenden County Circumferential Highway and Winooski Valley Park District. Whether a proposed highway, for which the State has no current construction timetable, rises to the level of a "facility" under Act 250 criterion 9(K) presents an issue of first impression. We hold that the Board's conclusion concerning endangerment of governmental facilities is not supported by its findings and that the Board's interpretation construing the circumferential highway as a facility under criterion 9(K) contravened legislative intent. We therefore reverse.

The Board's decision included findings on both the history and status of the circumferential highway and appellant's earlier attempts to develop its land. We summarize them here to lend context to our decision as well as to lay the groundwork for analyzing whether the findings support the conclusions.

Appellant owns a 71.9 acre parcel of land in Colchester (see attached map). Appellant's land abuts two existing municipal streets: Macrae Road, which east of the nearby intersection with Bean Road is essentially an unimproved dirt road; and Woodside Drive. Most of the parcel was purchased in 1983, but an existing right of way to build an extension of Woodside Drive was purchased sometime subsequently (it is not clear from the record exactly when). Unlike Macrae Road, Woodside Drive has existing municipal utilities. The Winooski Valley Park District bounds appellant's land on the north and east down to Macrae Road. A portion of the land along the western

boundary, including the right of way to Woodside Drive, lies in the proposed circumferential highway corridor in segment J,[1] the westernmost segment.

In 1989, the Agency of Transportation (AOT) received a master permit under Act 250 for the Chittenden County Circumferential Highway, conditioned on the District Commission's review of final design plans for individual segments of the highway. If eventually completed, the circumferential highway would constitute a limited access, four-lane highway running 17.7 miles from Interstate 89 in Williston to Vermont Route 127 in Colchester.[2] The proposed highway corridor would intersect appellant's right of way to Woodside Drive. Although some segments of the circumferential highway have received final Act 250 approval and some of those sections have been built and opened to traffic,[3] the design plans for segments I and J, both located west of Interstate 89, have not received final approval.

Between 1988 and 1994, appellant prepared several subdivision plans for review by the Town of Colchester. Early plans contemplated a large development in the eighty to ninety housing unit range that would access the property from Macrae Road. The plans would have required appellant to reconstruct Macrae Road east of its intersection with Bean Road, including the addition of a water line, drainage, and sidewalk. This would not have resulted in development of the portion of appellant's property falling within the proposed circumferential highway corridor. The Town objected to the plan because of the large number of proposed homes. Appellant did not submit a plan to the Town for a smaller subdivision with access from Macrae Road because the expense of reconstructing the road would not have been offset by the return from fewer housing units.

In 1992, the AOT initiated a condemnation action to take the portion of appellant's land, approximately 250 to 300 feet wide and 700

---

[1] Although we could not discern from the parties' arguments whether the parcel was located in segment I or J of the circumferential highway, we draw this fact from Exhibit AOT-1 admitted into evidence at the Board hearing by stipulation.

[2] This is the description given in the Board's findings. In the Chittenden County Circumferential Highway Act of 1986, the Legislature described the highway as "beginning at a point in the town of Williston easterly of the Exit 12 interchange on Interstate 89, thence proceeding through the towns of Williston, Essex (easterly of the village of Essex Junction), and Colchester." See 1985, No. 185 (Adj. Sess.), §§ 2(6), 4.

[3] Segments C, D, E, and F of the circumferential highway, between Vermont Route 117 and Vermont Route 2A in the Town of Essex, have been permitted, built, and opened to traffic. Segments A and B, between Interstate 89 in Williston and Vermont Route 117 in Essex, have received final permit approval, but have not been built.

to 800 feet long, within the proposed circumferential highway corridor. After a partial hearing on the matter but before the proceedings were concluded, the AOT voluntarily dismissed the action in December 1993 and ceased communication with appellant.

In light of the Town's opposition to a large project, the difficulties of constructing access from Macrae Road, and the AOT's apparent abandonment of the condemnation case, appellant then submitted for the Town's consideration the project now at issue — a smaller development with access from Woodside Drive. Appellant proposes to subdivide 28.98 acres into twenty-eight lots for single family homes, with 5.93 acres of open land. Under the new plan, appellant would build an extension from Woodside Drive to create a single access road for the subdivision. Some of the lots would have individual septic systems, and some would share a community system. On December 13, 1995, the Town gave final approval to appellant's subdivision plan. The AOT did not participate in the permitting process, nor did it reinstate condemnation proceedings.

Having received final approval from the Town planning commission for its development proposal, appellant filed an application for an Act 250 land use permit, pursuant to 10 V.S.A. § 6083, with the District 4 Commission on March 27, 1996. The AOT at that point sought and received party status to participate in the review process. It opposed appellant's application on the basis of Act 250 criteria concerning: unreasonable congestion or unsafe conditions with respect to proposed highways, see 10 V.S.A. § 6086(a)(5); development affecting public investments, see 10 V.S.A. § 6086(a)(9)(K); and nonconformance with local and regional plans and capital programs, see 10 V.S.A. § 6086(a)(10). In June 1996, the District Commission issued a decision approving the proposal under all Act 250 criteria, except 9(K). Appellant appealed the decision to the Environmental Board. The AOT filed a notice of appearance with the Environmental Board but did not cross-appeal. Therefore criteria 5 and 10 were not before the Board and likewise are not before us.

After a de novo hearing, the Board found that, if appellant were to build the proposed residential subdivision and the AOT were later to condemn the portions of appellant's land in the path of the current design for the circumferential highway, it would eliminate the four westernmost lots directly within the highway corridor and destroy the community wastewater disposal system. If a replacement site for wastewater disposal could not be found, ten or eleven additional lots would be affected and might have to be condemned. Most signifi-

cantly, if the AOT did not redesign or realign the highway, it would entirely cut off the subdivision's access to Woodside Drive.

Although the Board found that the AOT could realign the circumferential highway corridor to avoid appellant's property, it noted difficulties in accomplishing a realignment because: the Winooski Valley Park District abuts appellant's property on the north and east, and the AOT has already negotiated to minimize the impact of the highway on the park lands by passing through the park only on its northernmost periphery. The Board specifically found that the 1996 Colchester master plan refers to the highway path as "subject to change" and states that the circumferential highway route shown on the future land use map is meant to be general. Nonetheless, the Board attributes the uncertainty of the route entirely to the unsettled alignment of the highway through school district property. According to the Board, the matter must be put to the school district voters, but in any event the outcome would not change the alignment of the highway through appellant's property.

The Board further noted that, as another alternative to condemning the lots in the path of the current proposal for the highway, the AOT could redesign the project to cross over or under appellant's proposed extension of Woodside Drive, but that, based on the historical data from an earlier design,[4] such a change would entail five hundred thousand to seven hundred and fifty thousand dollars in increased construction costs. If the AOT did not raise or lower the circumferential highway or reroute it through park land, then the highway would entirely cut off access to the proposed subdivision from Woodside Drive.

With respect to the stage of highway development at the time of the appeal, the Board found that the AOT owns the right of way necessary for the circumferential highway east of Interstate 89, but has purchased only approximately twenty-three acres of the requisite 130 acres for construction of the highway segments west of Interstate 89 — the area where appellant's land is located. Of the land that the State has acquired west of Interstate 89, two properties are adjacent

---

[4] The Board included in its findings the fact that the AOT had submitted a previous plan to the District Commission that proposed building the roadway over appellant's property above existing ground level with a pedestrian underpass connecting Woodside Drive with Winooski Valley Park District land. The District Commission had expressed concerns about the visual impact of that design on adjacent residential properties. In response, the AOT redesigned the highway, lowering it to the existing ground level and providing access to the park at a different location not on appellant's property.

to appellant's land. The AOT does not, however, have a current timetable for construction of these circumferential highway segments, the costs of which are estimated at $19,000,000. At the time of the Board's decision, it found construction was not likely to commence for at least five years as the segments were not included in the State's five year capital construction plan. The State has no immediate plans, nor funding, to commence condemnation of appellant's lands. Further, neither the Legislature nor the federal government has appropriated funds for additional land purchases or construction in segments I and J. Although the AOT has obtained a master umbrella permit for the entire circumferential highway, it has not received final approval for segments I and J.

At issue in this case are the Board's conclusions concerning the status of the unbuilt portions of the circumferential highway as a "facility" for purposes of Act 250 criterion 9(K) and the proposed subdivision's endangerment of the circumferential highway and the Winooski Valley Park District. In its conclusions, the Board construed criterion 9(K) to protect not only existing facilities but also the public's investment in proposed facilities. The Board concluded that the unbuilt highway corridor through appellant's land comprised a sufficiently definite governmental facility to qualify as a facility under 9(K). It based this conclusion on: its determination that the Legislature had recognized the circumferential highway as unified facility, see 1985, No. 185 (Adj. Sess.); the State's devotion of more than twenty years to the planning and construction of major segments of the circumferential highway; and this Court's affirmance of a necessity determination with respect to other land the AOT sought to condemn for the circumferential highway even though the evidence at the condemnation hearing showed construction might not begin for ten to fifteen years, see *Agency of Transp. v. Mazza*, 161 Vt. 564, 564-65, 632 A.2d 363, 364-65 (1993) (mem.).

Despite the fact the Board framed the issue from the outset as whether the subdivision would endanger public investment in the circumferential highway and despite the fact the Board devoted the first section of its conclusions to determining that the portion of the circumferential highway at issue is a facility under criterion 9(K), the Board then failed to identify precisely which "facility" the proposed subdivision endangers: the park land alone or the highway or the two together. By statute, the applicant for an Act 250 permit bears the burden of showing that the proposed development will satisfy criterion 9(K). See 10 V.S.A. § 6088(a). The Board held that appellant had

satisfied the prong of criterion 9(K) prohibiting a subdivision from materially interfering with the function of a governmental facility, and then focused its analysis on the criterion's proscription of unnecessarily or unreasonably endangering the public investment in the facility.

After reiterating the AOT argument concerning the substantial increase in the costs of acquiring appellant's property if it were permitted and potential infrastructure redesign costs, the Board concluded that "these facts alone do not support the conclusion that the [proposed subdivision] poses an unnecessary or unreasonable danger to the public's investment." Instead, the Board decided that the current design of the subdivision would "endanger the public investment in the parcels adjoining the . . . property," namely the Winooski Valley Park District and a private lot. The Board stated: "Assuming that the [subdivision] were approved as presently designed, the AOT would have to renegotiate with the WVPD [Winooski Valley Park District] for another alignment, . . . and [this would] likely result in the taking of more park land and the bisection of the park, thereby further endangering the public's investment" in the park land.

The Board then went on to contradict its earlier conclusion that the subdivision would not endanger public investment in the circumferential highway by mentioning the highway along with the park lands as endangered facilities. "While the [subdivision] endangers the public's investment in the CCCH [circumferential highway] and adjoining lands, the question remains whether that endangerment is unnecessary or unreasonable." To summarize, despite a certain lack of clarity it appears from this sequence of Board conclusions that the Board determined the subdivision endangers the park lands by virtue of the supposedly forced realignment of the circumferential highway to bisect the park and endangers the circumferential highway itself only by increasing the AOT's condemnation, permitting, and construction costs.

The Board then interpreted appellant's burden on the element of unreasonable or unnecessary endangerment to require a demonstration that appellant had "incorporated principles of avoidance or mitigation in its present subdivision design." It decided appellant had not met this burden because appellant had not shown development of its land using Macrae Road would be financially unfeasible. Consequently, the Board upheld denial of the permit under 10 V.S.A. § 6086(a)(9)(K), and this appeal followed.

Appellant raises three main arguments on appeal. First, appellant claims that certain conclusions are not supported by the Board's findings. Specifically, appellant argues the Board's findings do not support the conclusion that appellant's project would force relocation of the circumferential highway and thereby endanger the public investment in the highway and in the Winooski Valley Park District. As part of this argument, appellant challenges the Board's conclusion that the plan for the proposed circumferential highway is sufficiently definite so as to constitute a facility under criterion 9(K). Second, appellant asserts that the Board's application of criterion 9(K) to deny the proposed development of appellant's land conflicts with statutory law on highway condemnation and is contrary to legislative intent. Third, appellant claims that the Board's application of criterion 9(K) to deny appellant the right to develop its land in order to preserve it for development by the state as a highway amounts to an unconstitutional possessory taking of private land for public purposes.

On appeal, the Board's factual findings are conclusive if supported by substantial evidence on the record as a whole. See *id.* § 6089(c). We therefore review the Board's findings of fact to determine whether they are based on relevant and substantial evidence properly before the Board. In our review of the Board's conclusions of law, we consider in turn whether they are supported by the findings and rationally derived from a correct interpretation of the law. See *In re Wal\*Mart Stores, Inc.*, 167 Vt. 75, 80, 702 A.2d 397, 401 (1997).

In this case, the Board's findings do not lead logically to its conclusion that appellant's subdivision would endanger the public investment in governmental facilities. The Board found that, if appellant built the proposed subdivision, the AOT would have two alternatives. It could either condemn the individual subdivision properties necessary to build the highway corridor or it could realign the corridor. The Board then took an unwarranted inferential side-step when it drew from this finding the conclusion that granting an Act 250 permit for appellant's subdivision would force the AOT to realign the corridor to bisect a greater portion of park lands and thereby endanger the public investment in the park and the highway. Somewhere between the findings and conclusions, the Board inexplicably turned the AOT's alternatives into a forced choice. Even if the Board reached this conclusion in part by extrapolating from other findings concerning the additional expenses the AOT would have to incur to condemn the permitted property and possibly redesign the highway to accommodate the remainder of the subdivision's access to

Woodside Drive, the Board had itself concluded that increased costs alone could not support denial of the permit.

The Board's conclusions also recognized that criterion 9(K) has been applied in the past principally to development proposals contiguous to already-constructed governmental facilities. Thus, given the unprecedented nature of applying criterion 9(K) to an unbuilt highway, the Board may simply have been attempting to anchor its decision to an existing facility — here, park land — which clearly comes within the purview of criterion 9(K). The endangerment to park land, however, depends on the assumption that the increased costs of condemning appellant's land would ultimately force the AOT to consider a realignment through the park land. This bootstrap reasoning underlying the Board's conclusion does not obscure the fact that the only unreasonable and unnecessary danger to either the circumferential highway or the park land identified by the Board is increased condemnation or construction costs for the AOT. Indeed, at oral argument the AOT conceded as much, saying that, while it did not set out to design the circumferential highway to devalue appellant's land, neither does it now want to see the value of appellant's land increase. The AOT admitted that it "quite frankly, wants to take advantage of 9(K)."

█ We hold that the Board erred in concluding that appellant's proposed subdivision development endangered public investment in the park land. We must go on, however, because its decision to deny a permit apparently also rested on its conclusion that the subdivision endangered investment in the highway. We note that this issue has arisen before, even if not squarely presented,[5] and the AOT conceded at oral argument that the agency primarily opposed the appellant's permit application because it would increase future condemnation costs when the pertinent sections of the circumferential highway are finally built. We therefore proceed to consider appellant's additional challenges to the Board's application of Act 250 criterion 9(K). We do not decide, however, whether the Board's decision amounts to an

[5] In *Raymond v. Chittenden County Circumferential Highway*, appellants suspected but offered no evidence that the Environmental Board had denied their Act 250 permit application for a subdivision development because of the proposed circumferential highway. See 158 Vt. 100, 102, 604 A.2d 1281, 1283 (1992). Unlike *Raymond*, here the Board's findings and conclusions establish without a doubt that the proposed highway is the basis for denial of the permit. Moreover, in *Raymond*, as opposed to the instant case, the parties had stipulated that the property would be treated as if appellants' proposed subdivision were fully permitted for purposes of the condemnation proceedings.

unconstitutional taking and, if so, what type — possessory versus regulatory — since we resolve the matter on statutory grounds.

Criterion 9(K) states in pertinent part that "[a] permit will be granted for the development or subdivision of lands adjacent to governmental and public utility facilities, . . . including . . . highways, . . . when it is demonstrated that . . . the development or subdivision will not unnecessarily or unreasonably endanger the public or quasi-public investment in the facility . . . ." 10 V.S.A. § 6086(a)(9)(K). Beyond a nonexclusive list enumerating governmental and public facilities, in which highways appear as one example, the Legislature provided no further definition of what constitutes a "facility." See 10 V.S.A. § 6001 (definitions).

To arrive at its conclusion that the segments west of Interstate 89 comprised a public or governmental facility for purposes of criterion 9(K), the Board relied in part on the Legislature's purported recognition of the highway as a unified facility in the Chittenden County Circumferential Highway Act of 1986. Although the Act describes the circumferential highway as one entity, nowhere does it explicitly refer to the highway as either "unified" or as a "facility." See 1985, No.185 (Adj. Sess.) passim. The legislative findings designate the circumferential highway as the recipient of federal demonstration project funds and describe the purpose of the project as a feasibility study in "reducing the time and cost required to complete highway projects, other than projects on the Interstate System, in areas requiring improved access between rapidly growing suburban areas and established urban core areas." *Id.* § 2(2)-(4). Assuming that the Legislature's findings and references throughout the Act to the single entity named the Chittenden County Circumferential Highway suffice to qualify it as a "unified facility," we nonetheless note that, despite a rather detailed description of the highway's path, the legislative definition does not necessarily include the highway segments at issue, i.e., those west of Interstate 89 in the Town of Colchester. See *id.* § 2(6). While the entire circumferential highway may comprise just one facility for purposes of the Act (i.e., for the purpose of transferring authority over it from the local union municipal district to the AOT, for funding and condemnation purposes, and for inclusion in the state highway system), it does not necessarily follow that a portion of the highway, unspecified in the Act, should be considered part of the existing portions of the circumferential highway for purposes of Act 250.

■ Moreover, and closer to its statutory home so to speak, criterion 5 of Act 250 explicitly encompasses proposed highways whereas criterion 9(K) does not. Criterion 5 states that a development "[w]ill not cause unreasonable congestion or unsafe conditions with respect to use of the highways, . . . *existing or proposed.*" 10 V.S.A. § 6086(a)(5) (emphasis added). Had the Legislature intended criterion 9(K) to apply to proposed as well as existing facilities, it could have mirrored the phrase from criterion 5 in criterion 9(K). For the Court to construe criterion 9(K) to include "proposed" facilities, when the Legislature itself declined to do so, would render the word surplusage in criterion 5. Where the Legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the Legislature did so advisedly. See *Payea v. Howard Bank,* 164 Vt. 106, 107, 663 A.2d 937, 938 (1995) (when construing statute, we presume language is inserted advisedly and did not intend to create surplusage); *Vermont State Colleges Faculty Fed'n v. Vermont State Colleges,* 138 Vt. 451, 455, 418 A.2d 34, 37 (1980) (presuming legislative language was inserted advisedly with intent that it be given meaning and force). Thus, we assume that the Legislature advisedly inserted the language "existing or proposed" in criterion 5 and just as advisedly omitted it from criterion 9(K).

Neither do the other two factors cited by the Board support the conclusion that the proposed highway corridor through appellant's land is a governmental facility under 9(K). First, the length of time the AOT has spent on design and construction of some sections may manifest the failure of the federal demonstration project but does not show that the ultimate construction of the sections at issue is anything more than speculative, especially in light of the AOT's failure to resume condemnation proceedings. Second, our decision in *Mazza,* on which the Board relies, arose in the context of a condemnation proceeding, not an Act 250 permit hearing. See 161 Vt. at 564, 632 A.2d at 364 (affirming condemnation of land to connect circumferential highway with Interstate 89 in Colchester). Although the Legislature had not yet appropriated funds for the section of highway at issue in *Mazza,* we held that the project manager's expressed intention to commence construction within the requisite statutory period, i.e., fifteen years from the date of condemnation, see 19 V.S.A. § 502(e), together with the legislative commitment to provide funding for the project, as evinced by 1985, No. 185 (Adj. Sess.), § 6(b), met the AOT's burden on that element of the condemnation. See *Mazza,*

161 Vt. at 565, 632 A.2d at 365. The different contexts aside, unlike *Mazza*, here the AOT has evinced no such intent to begin construction within a specified period. And, since the AOT has withdrawn its condemnation action, it is not even moving forward on starting the fifteen-year clock running. If anything, the AOT's withdrawal of the condemnation action and its continued failure to recommence condemnation proceedings support an inference that construction will not begin for more than fifteen years.

At any rate, the AOT readily conceded it has no current plans or funding to take appellant's land. To reiterate a few of the Board's findings, the AOT has purchased only twenty-three out of the 130 acres necessary to construct sections I and J. It does not have final permit approval for the highway section in which appellant's land is located, and the path of the corridor through sections I and J must still pass a school district vote.

█ We will not foreclose the possibility that in some circumstance a proposed, but unbuilt, highway may amount to a governmental facility under criterion 9(K). In this case, however, we hold that construction of the circumferential highway through appellant's land is too speculative to conclude that it is an extant governmental facility. We conclude that the Board's criterion 9(K) decision is not sustainable either with respect to the park land or the highway corridor. Since no ground for the permit denial is sustainable, appellant has successfully satisfied criterion 9(K), the only criterion in issue. No further proceedings are warranted, and appellant is entitled to the permit.

*Reversed and remanded for issuance of the permit.*