Verne C. Batchelder and Kathryn G. Batchelder v.
State Highway Board

[291 A.2d 257]

No. 29-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed April 4, 1972

Motion for Reargument Denied June 6, 1972

*Black & Plante,* White River Junction, for Plaintiffs.

*James M. Jeffords,* Attorney General, and *Richard M. Finn,* Assistant Attorney General, for State Highway Board.

**Shangraw, C.J.** This is a condemnation-valuation case. The plaintiffs, Verne C. Batchelder and Kathryn G. Batchelder, were owners of a 171 acre dairy farm at the time of the taking on November 18, 1968. The farm was located just south of the village of Fairlee, Vermont, on both sides of U.S. Route 5. The State Highway Board condemned 9 acres of plaintiffs' land, thereby cutting the farm into two sections and severing its direct access to U.S. Route 5.

At the time of the condemnation plaintiffs were maintaining approximately 84 head of cattle on their farm. In the past they had maintained as many as 123 head of cattle. Because only 36 acres of the 171 acres composing the plaintiffs' farm were tillable land, the plaintiffs had to rent other land in order to grow enough feed to maintain the cattle they kept.

The Vermont State Highway Board awarded the Batchelders $10,000 for the land taken. An appeal from the award was taken by the Batchelders to the Orange County Court pursuant to 19 V.S.A. § 231. The right to a trial by jury was waived, as were all findings of fact other than those required by 12 V.S.A. § 1904a, which states:

> "A trier of fact in proceedings to determine damages due the owner of land taken by a governmental body by eminent domain shall find separately the value of each element thereof specified in section 221(2) of Title 19. When a judge submits the determination thereof to a jury, he shall instruct the jury that they shall bring in a special verdict on each of those elements involved in the case."

The court heard the matter and awarded $36,000 damages and interest from November 19, 1968. Of the $36,000 damages, $14,000 was apportioned to damage resulting from the taking of property, and $22,000 to the direct and proximate lessening of the value of the remaining property.

The State Highway Board seasonably appealed from the Judgment Order of the Orange County Court to this Court.

The State Highway Board first claims the trial court committed reversible error when it permitted evidence of a 1953 sale from the Batchelders to the Adirondack Bottled Gas Company. One of the testifying appraisers, Mr. Anthony Farrell, indicated he used this sale with others of more recent origin to establish the value of the plaintiffs' farm.

At the time the evidence of the 1953 sale was introduced counsel for defendant objected saying it was "too remote" and that ". . . it has no bearing on the value of the land at this time." The trial judge overruled the objection stating it went ". . . to the weight that ought to be ascribed to this particular piece of evidence."

This appears to be the first instance this Court has had to decide how close to the date of condemnation the sale of a similar parcel of land has to be for it to furnish an indication of the present value of the plaintiffs' farm. The general rule in the other states appears to be that of leaving the determination to the trial court, and was stated as such in *U.S.* v. *2,253.28 Acres of Land, Etc.*, 414 F.2d 965, 972 (5th Cir. 1969), when that court said:

> "As we have indicated on previous occasions, this court is reluctant to 'substitute its judgment for that of the trial court in determining whether a particular sale was too remote in time.' "

See also *City of Pleasant Hill* v. *First Baptist Church*, 1 Cal. App.3d 384, 415, 82 Cal. Rptr. 1 (1st. Dist. 1969), and numerous cases cited therein; *Manning* v. *Redevelopment Agency of Newport*, 103 R.I. 371, 238 A.2d 378, 381 (1968) ; and *Waldenmaier* v. *State*, 33 A.D.2d 75, 305 N.Y.S.2d 381, 383 (3d Dept. 1969).

In the situation where there has been such a passing of time that the parcel of land being compared to the condemned parcel appears remote, the proper procedure to attack such a comparison was discussed in 5 P. Nichols, Eminent Domain § 21.31[2] (3d rev. ed., J. Sackman & P. Rohan 1969), when it was stated:

> "Remoteness in point of time, however, will condemn the evidentiary value of a sale only where there has been such a change in conditions during the interval as to make the sale an unreliable test of value. By proving a change in market conditions either party may explain away the significance of the sale."

It is clear the trial judge was aware of this when he stated defendant's objection went to the "weight" to be given to the evidence of the 1953 sale and not its admissibility. At that point it became incumbent upon the defendant to prove a change in market conditions, or allow the evidence to stand as is.

Thus, in this instance, the trial judge properly exercised his discretion when he allowed the evidence of the 1953 sale to be admitted.

The second reversible error claimed by the State Highway Board was committed when the trial court allowed both appraisers testifying for the plaintiffs to give consideration to other land not owned by the plaintiff when they determined the highest and best uses and valuations of plaintiffs' land.

As provided for by 19 V.S.A. § 221(2) the value placed upon private property appropriated for highway uses shall be the "value for the most reasonable use of the property . . . ." See *Smith* v. *State Highway Board*, 125 Vt. 54, 56, 209 A.2d 495 (1965), and cases therein cited. This Court has frequently held there is no exact formula available to determine in every case what elements properly enter into consideration when the market value of the property sought to be condemned is fixed. *Allen* v. *Burlington Housing Authority*, 129 Vt. 8, 13, 270 A.2d 588 (1970); *Smith* v. *State Highway Board*, 125 Vt. 54, 56, 209 A.2d 495 (1965); *Record* v. *State Highway Board*, 121 Vt. 230, 240, 154 A.2d 475 (1959); *Crawford* v. *State Highway Board*, 130 Vt. 18, 285 A.2d 760, 764 (1971).

In this case the plaintiffs owned 171 acres of land, 36 acres of which were tillable. In addition to the land owned by the plaintiffs, they rented 54 acres of highly productive meadowland on which they were able to grow three crops of alfalfa a year. The evidence further revealed that without the use of this rented land, the plaintiffs could maintain but 65 head of cattle on their farm. The fact that the plaintiffs had to rent additional land to maintain the cattle they kept on their farm has its importance in the consideration that it tended to raise the cost of operating the farm, and thereby diminish its fair market value.

In spite of the fact the plaintiffs had to rent extra land to maintain their cattle the first appraiser and real estate broker to testify for the plaintiffs stated the highest and best use of the plaintiffs' property before the taking would be as a dairy farm with strong development possibilities. This witness testified that before the taking the farm had a value of $124,200 and that after the taking its value was $71,400 resulting in damages aggregating $52,500. The second appraiser, with 25 to 30 years experience in the real estate business, to testify for the plaintiffs determined the highest and best use of plaintiffs' property before the taking would be as a dairy farm. His appraisal before the taking was $130,000 and after the taking

$75,000. Thus, both appraisers were merely considering one of the elements in the formula one must utilize to determine the most reasonable use of the property as required by 19 V.S.A. § 221 (2).

Certainly it goes without saying that the use to which a property is actually put must be considered as one of its "reasonable" uses. If this turns out to give the property its highest value, it can qualify as the "most reasonable use."

The first appraiser gave a detailed description of the damages suffered to the plaintiffs' land and buildings by the taking. Nowhere in this description of damages did he include the land rented by the plaintiffs. The other appraiser to testify for the plaintiffs also gave a detailed description of the damages suffered to the plaintiffs' land and buildings, during which he made no reference to the land rented by the plaintiffs.

While defendant's appraiser valued the farm before the taking at $61,500 and that after the taking its value was $51,500, the factual determination was for the court.

The damages sought by the plaintiffs under 19 V.S.A. § 221 (2) were for the value of the property taken and for the direct and proximate lessening of the value of the property remaining immediately after the taking. *Children's Home* v. *State Highway Board,* 125 Vt. 93, 95, 211 A.2d 257 (1965); *Rome* v. *State Highway Board,* 121 Vt. 253, 255, 154 A.2d 604 (1959); *Demers* v. *City of Montpelier,* 120 Vt. 380, 387, 141 A.2d 676 (1958).

We find no occasion to disturb the judgment.

*Judgment order affirmed.*