## Scott Construction, Inc. v. City of Newport Board of Civil Authority

[683 A.2d 382]

No. 94-185

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 19, 1996

Motion for Reargument Denied June 13, 1996

*Duncan Frey Kilmartin* of *Rexford & Kilmartin*, Newport, for Plaintiffs-Appellants.

*Robert R. Bent* of *Zuccaro, Willis & Bent, P.C.*, St. Johnsbury, for Defendant-Appellee.

**Allen, C.J.** In two cases tried together, taxpayers appeal decisions of the Orleans Superior Court setting the assessed valuation of two properties in the City of Newport. We affirm both judgments.

One property, known as Indian Point Farm, is a former dairy farm owned by Daniel Scott and his father, Richard Scott, consisting of about 148 acres and two residences. The property is wholly within the Newport city limits and has extensive road frontage, as well as substantial shoreline on Lake Memphremagog. The second parcel is owned by Scott Construction, Inc. and consists of a lot of about one acre.

The Indian Point property was assessed by the City during a general 1990 revaluation at $891,000, based on an assessment by MMC, Inc., an appraisal firm. Taxpayers appealed to the Board of Civil Authority (BCA), which set the valuation at $890,200. They then appealed to the superior court, which concluded that the fair market value was $768,000, based on an appraisal by Douglas McArthur, an independent real estate appraiser who used a development model under which the parcel would be subdivided and sold as nine separate lots. McArthur considered the property unique because of its size and lakeshore location and testified that a lake shore development would be its highest and best use. In his plan, seven of the lots to be created would be sold undeveloped, while the last two would be sold with an existing dwelling on each. The seven lots were estimated to sell for an aggregate of $1,050,000, and the eighth and ninth for a total of $450,000. The total development cost to be subtracted from sale proceeds was projected to be $732,000, yielding a net estimated value of $768,000.

The one-acre lot was assessed during the City's general revaluation at $22,600 and was reduced to $20,000 by the BCA. On appeal, the court ruled that the $20,000 valuation was correct.

## I. Indian Point Property

Taxpayers first argue that the highest and best use of the property is as a farm. Vermont law compels assessment of real property based on its fair market value. The statute defines fair market value as:

> the price which the property will bring in the market when offered for sale and purchased by another, taking into consideration all the elements of the availability of the property, its use both potential and prospective, any functional deficiencies, and all other elements such as age and condition which combine to give property a market value.

32 V.S.A. § 3481(1). As indicated by the words "potential and prospective," fair market value reflects the highest and best use. See, e.g., *Board of Assessment Appeals v. Colorado Arlberg Club*, 762 P.2d 146, 152 (Colo. 1988) (reasonable future use considered because relevant to property's present market value); *Federated Dep't Stores, Inc. v. Board of Tax Review*, 291 A.2d 715, 720 (Conn. 1971) ("A taxpayer who chooses to use his land in a manner which is not consistent with its highest and best use should not be rewarded with a lower assessment, the effect of which is to increase the tax burden on others."); *Edward Rose Bldg. Co. v. Independence Township*, 462 N.W.2d 325, 330 (Mich. 1990) (land is appropriately valued "as if available for development to . . . that most likely legal use which will yield the highest present worth"). The highest and best use of property has generally been construed to refer to "the value of the property for its most profitable, likely, and legal use." D. Stockford, *Property Tax Assessment of Conservation Easements*, 17 B.C. Envtl. Aff. L. Rev. 823, 827 (1990).

The City presented evidence of, and argued for, appraisal at the development value of the property. The court agreed, basing its decision on McArthur's testimony and written appraisal. The issue of properly assessing large, relatively undeveloped, nonfarm or nonforest properties has long been a subject of debate in Vermont. On one side of the debate are landowners who wish to maintain traditional land uses and pay lower taxes than might be suggested by postulated development uses. On the other side are towns that want to apply highest-and-best-use valuations because they tend to enhance revenues and promote equity. Through Vermont's Current Use Appraisal Program, 32 V.S.A. §§ 3751-3775, individual landowners who actively manage twenty-five or more acres of agricultural or

forest land are eligible for current-use rather than highest-and-best-use valuation. Properties subject to conservation easements may qualify for similar benefits. Note, *Changing Vermont's Current Use Appraisal Program to Provide Property Tax Incentives for Conservation Easements*, 17 Vt. L. Rev. 165, 180 (1992). But towns generally argue that, except for these specifically enacted programs, conservation and environmental concerns are not the primary purpose of tax laws and that using valuation methodologies as an indirect means of achieving ad hoc tax abatement is improper under our laws.

In the present case, taxpayers attacked the City's assumption that Indian Point was readily convertible to a lakeshore residential subdivision or that a change in use would result in a higher value. They contend that the property's highest and best use was its present agricultural use and that the court erred when it relied on the City's evidence. Taxpayers, however, have failed to demonstrate that the court's findings are clearly erroneous. *P.F. Jurgs & Co. v. O'Brien*, 160 Vt. 294, 300, 629 A.2d 325, 329 (1993) (findings of fact set aside only when clearly erroneous, with due regard given to trial court's opportunity to judge credibility of witnesses and weight of evidence).

The City's evidence, particularly the McArthur appraisal, was valid, detailed and complete. It addressed environmental permits, development and marketing costs, and considered value in light of comparable sales of lakefront properties. Taxpayers' evidence, particularly that of Bruce Taylor, who testified that the highest and best use of the property was as a farm, was vague and conclusory. His testimony lacked specific data or information on local or state development permit costs or why those costs — set forth in the evidence and factored into the McArthur valuation — would bar a developer from pursuing a residential lakeshore project. Taxpayers also introduced evidence that an adjoining property had been denied an Act 250 permit in order to demonstrate that the subject property would be similarly treated. The court disagreed, again on the basis of the McArthur development proposal, under which an Act 250 permit would not be needed. Therefore, taxpayers have not shown the court's finding to be clearly erroneous.

◼ Apart from these site-specific valuation issues, taxpayers suggest that the mere existence of uncertainty in the regulatory process bars consideration of development potential. We disagree. By nature, the highest-and-best-use concept depends on market and legal assumptions. See *Pacific Mut. Life Ins. Co. v. County of Orange*, 232 Cal. Rptr. 233, 236 (Ct. App. 1985) (normal uses to which potential

purchasers could put property must be considered because part of property's market value); *Colorado Arlberg Club*, 762 P.2d at 152 (reasonable future use of real property is one element of fair market value); *Division of Tax Appeals v. Township of Ewing*, 178 A.2d 229, 231 (N.J. Super. Ct. App. Div. 1962) ("assessor must consider the possibility of sale to a buyer who intends a different use, unless such possibility is so remote as to have no real bearing upon current value"). The court's highest-and-best-use analysis was proper on the facts of this case and consistent with statutory notions of fair market value.

■ Taxpayers next argue that the court erred in relying on the McArthur appraisal: first, because his sole method of valuation was the "development analysis," and second, because he used comparables to reach conclusions about the marketability of lots after completion of the proposed development plan. The court was not limited to evidence of comparables and was free to weigh any competent, relevant, and probative evidence of valuation. See *Sondergeld v. Town of Hubbardton*, 150 Vt. 565, 571, 556 A.2d 64, 67 (1988).

■ Taxpayers also argue that the appraisal was a "nullity," because, according to taxpayers, 32 V.S.A. § 3481 requires a municipality to "treat[] the property as a whole in the hands of its current owner." Taxpayers' construction of § 3481 is inconsistent with the mandate of that provision to consider a property's "use both potential and prospective."

■ Taxpayers next argue that partition of a property for appraisal purposes violates 32 V.S.A. § 4467, because the statute refers to *"the* property" (emphasis added) and not to parts of a property. There is nothing inconsistent in a statutory reference to "the property" and a valuation analysis that considers parts of the whole. Taxpayers cite no other support for the proposition that the City could not appraise Indian Point by applying separate valuation criteria to parts of the parcel. If taxpayers' limitation were applied, it would be difficult, if not impossible, to consider a development scenario for a property the size of the subject property, because the only developments that could be considered would be those contemplating a single use of the entire, undivided parcel.

Moreover, McArthur's appraisal method does not run afoul of *Raymond v. Chittenden County Circumferential Highway*, 158 Vt. 100, 604 A.2d 1281 (1992). In *Raymond,* we held that the condemna-

tion value in that case "reflected the state of the property at the time of condemnation — that is, as raw land, permitted for development, and sold as one parcel." *Id.* at 103, 604 A.2d at 1283. We added that "[i]t is not unfair to value this property as raw land that can be used for a housing development. Its development potential is contained in this value." *Id.* at 105, 604 A.2d at 1284. We disallowed the "lot method" in *Raymond* because we regarded the development costs as uncertain and conjectural. *Id.* at 104, 604 A.2d at 1284.

■ Contrary to taxpayers' argument, *Raymond* did not hold that any valuation method that relied on the "lot method" is inherently unsound. Testimony as to the value of property if subdivided is generally admissible on the issue of fair market value as evidence of the highest and best use of that land. *Tolman v. Carrick*, 136 Vt. 188, 192, 385 A.2d 1119, 1122 (1978); see also *United States v. 47.3096 Acres in Oxford Township*, 583 F.2d 270, 272 (6th Cir. 1978) (lot method admissible in eminent domain cases if proponent offers credible evidence of costs of subdivision); *Dash v. State*, 491 P.2d 1069, 1071 (Alaska 1971) (sounder view to accept evidence of lot method); *State v. Deal*, 233 P.2d 242, 247 (Or. 1951) (where property is adaptable to particular use, all circumstances demonstrating this adaptability may be presented); 4 J. Sackman, Nichols on Eminent Domain § 12B.14[1], at 12B-152 (rev. 3d ed. 1995). Ultimately, the decision to admit and consider the evidence bearing on valuation was within the sound discretion of the court. *Soutiere v. Soutiere*, 163 Vt. 265, 271, 657 A.2d 206, 209 (1995).

Taxpayers next criticize the "spaghetti lot" approach used by McArthur to avoid Act 250 as demonstrating the "invalidity, impracticality and inadvisability" of the approach. But other than the bare assertion that the nine-lot scenario would offend Act 250's shorelands and agricultural lands criteria, irrespective of lot configuration, taxpayers do not state why the scenario is impractical, and they fail to demonstrate why it is invalid.

## II. One-Acre Parcel

In the second of the consolidated cases, taxpayer concedes that the City presented evidence of comparable sales with respect to the one-acre parcel, but questions whether they were comparable. Taxpayer argues that the two comparables accepted by the court had passed regulatory muster as part of a platted subdivision, were not bisected by power poles, and benefited from completed infrastructure, while the one-acre parcel was undevelopable.

■ Taxpayer has not demonstrated, however, that the court abused its discretion in accepting the two challenged comparables. Comparable properties are rarely, if ever, identical properties. Absent abuse of discretion, the degree of comparability goes to the weight of the evidence and is a matter for the trier of fact. *Tolman*, 136 Vt. at 192, 385 A.2d at 1122; accord *Batchelder v. State Highway Bd.*, 130 Vt. 263, 265, 291 A.2d 257, 258-59 (1972).

Moreover, there was ample evidence to support the court's conclusion that the one-acre parcel was suitable for residential development. Taxpayer's attempt to build a medical arts facility on the property had been rejected because of lack of septic capacity, but Daniel Scott conceded on cross-examination that he had not applied to the zoning administrator for a permit to use the property for residential purposes. He testified to only a "verbal thing" from City authorities that he could not use the parcel "for any reason, for any purpose."

■ The City also supported its valuation of the one-acre parcel by use of a land-value table, which taxpayer argues was impermissible under our tax statute. *Ames v. Town of Danby*, 136 Vt. 78, 82, 385 A.2d 1075, 1078 (1978). The problem with the use of land-value tables is the potential for arbitrary valuations. Where the land-value table is based on appropriate sales data, however, this problem is mitigated. There was ample evidence in the present case that the appraisal methodology was tied to actual sales data, and that once per-square-foot values were applied to a given property, appropriate adjustment factors were applied reflecting differences in depreciation, amenities, frontage, views, and other factors affecting valuation.

### III. Additional Arguments

■ Taxpayers contend that the court's findings and conclusions were confusing, inconsistent, and conjectural. This argument revisits most of the taxpayers' substantive arguments already considered in this opinion. For example, taxpayers challenge the court's omission of findings, with respect to the one-acre lot, concerning specific valuation factors* emphasized in taxpayers' case and not mentioned in the decision. Taxpayers found numerous similar deficiencies with the court's findings with respect to the Indian Point Farm, again, closely

---

*Such as the issue of on-site sewage capability, availability of a permit for a multi-purpose house on the property, and the cost of removing the power poles from the property.

related to taxpayers' substantive case on valuation. The law merely requires that the court sift through the evidence and make findings sufficient to indicate to the parties how it reached its ultimate conclusion, not that it make findings tailored to any particular theory of valuation. See *Kruse v. Town of Westford*, 145 Vt. 368, 374, 488 A.2d 770, 774 (1985). Here, the lack of findings on taxpayers' theories of valuation amounted to a rejection by the court of their approach to valuation, not a failure by the court to explain its rationale.

*Affirmed.*

