2009 VT 85

**Karl and Jane ZURN v. CITY OF ST. ALBANS**

**Zurn Sisters Development, LLC v. City of St. Albans**

[980 A.2d 795]

Nos. 08-274 & 08-284

---

¶ 1. August 3, 2009. Taxpayers Karl and Jane Zurn and Zurn Sisters Development, LLC bring this consolidated appeal pro se from the Vermont State Appraiser's decision to affirm the property tax assessment of two parcels of land located in the City of St. Albans. Taxpayers argue that the State Appraiser erred by not discounting the fair market value of the properties based on their "non-salability" on the relevant appraisal date. We disagree and affirm the appraiser's decision.

¶ 2. The uncontested facts of the case are as follows. The subject properties

---

were originally purchased in 2003 by Karl and Jane Zurn as part of an approximately eighteen-acre parcel located in the City and Town of St. Albans. Karl and Jane made plans to subdivide and develop the land. In late 2004 and early 2005, as a part of their estate plan, Karl and Jane deeded the land to their three daughters. In early 2006, the daughters formed Zurn Sisters Development, LLC (ZSD) and conveyed the land to ZSD. As ZSD, the daughters continued to pursue the development plans set in motion by their parents. Those plans included subdividing approximately ten acres of the land located in the City of St. Albans into eight lots: six house lots, a lot containing a stormwater retention pond, and a lot of retained land.

¶ 3. Two of the house lots had already been sold — one back to Karl and Jane — when, in July 2006, the Coordinator for the District 6 Environmental Commission rendered a jurisdictional opinion in which he ruled that ZSD's development project required permitting under Act 250. Upon ZSD's request, the Coordinator reconsidered, but ultimately confirmed his opinion in September 2006. ZSD appealed to the Environmental Court, which granted it summary judgment on November 9, 2007, holding that as an eight-lot subdivision, the proposed development did not trigger Act 250 jurisdiction. A third house lot was sold in March 2008.

¶ 4. Meanwhile, on April 1, 2007, while the appeal of the Coordinator's ruling was still pending before the Environmental Court, the properties were appraised by the City of St. Albans. Taxpayers appealed the appraisals to the St. Albans Board of Civil Authority, under 32 V.S.A. § 4404(a), which affirmed the appraisals. Taxpayers then appealed to the Director of Property Valuation and Review, pursuant to § 4461(a), who appointed a State Appraiser to conduct a de novo proceeding under § 4467.

¶ 5. Before the State Appraiser, both ZSD and Karl and Jane argued that the properties' values should be discounted because the properties could not be sold on the appraisal date as a result of the Coordinator's then-effective ruling that the property was subject to Act 250 jurisdiction and the fact that the land had yet to be permitted. ZSD argued that the fair market value of their property would otherwise be $130,900, but that it should be discounted to $0. Karl and Jane argued that the fair market value of their property would normally be $90,000, but that the value should be subject to some unspecified discount. The State Appraiser issued decisions on April 17, 2008 valuing the ZSD property in excess of $800,000[*] and Karl and Jane's property at $591,200. The State Appraiser rejected the parties' initial property valuations — of $130,900 and $90,000 — as unsupported by the evidence. The State Appraiser rejected ZSD's argument that the fair market value should be discounted to $0 based on "non-salability" as "totally unreasonable," and opined that, even if some discount was appropriate, ZSD had offered no evidence from which the State Appraiser could calculate such a discount. The State Appraiser disposed of Karl and Jane's request for an unspecified discount under similar rationale. This appeal followed.

¶ 6. Taxpayers contend on appeal, as they did below, that it was error for the State Appraiser not to discount the fair market value of their properties due to the Coordinator's then-effective determination that the property was subject to Act 250 jurisdiction. Taxpayers argue that because 10 V.S.A. § 6081 precluded them from marketing or selling their property

---

[*] In the State Appraiser's decision regarding ZSD's property, there is a discrepancy between the fair market value that appears in the body of the decision — $804,400 — and that which is listed on the cover page — $817,600. The parties do not point out this discrepancy, and we do not resolve it.

on the appraisal date, it was error for the appraiser not to discount the value of their properties for "non-salability." Section 6081 provides as follows with regards to "subdivisions" and "development" subject to Act 250 jurisdiction:

No person shall sell or offer for sale any interest in any subdivision located in this state, or commence construction on a subdivision or development, or commence development without a permit.

10 V.S.A. § 6081(a). Taxpayers fault the State Appraiser's conclusion that "as of the [a]ppraisal date of April 1, 2007, [the properties in question] could have been taken under contract to purchase, lease with option to purchase, or any other legal arrangement to purchase real property, contingent upon the pending decision of the [Environmental Court]." Taxpayers say this was error under § 6081. We assume without deciding that taxpayers are correct as to the application of § 6081 and that their properties were, indeed, not able to be sold as of the appraisal date. However, whether § 6081 prevents a sale of property is a separate question from what value should be placed on a property for purposes of tax assessment. We affirm the State Appraiser's decision.

¶ 7. The requirements for successful appeals of property tax assessments are well established in our law. In a de novo appeal before the State Appraiser, the City has the initial burden to produce evidence of the fair market value; once that burden is met, the burden of persuasion resides with the taxpayer. *Barrett v. Town of Warren*, 2005 VT 107, ¶¶ 7-8, 179 Vt. 134, 892 A.2d 152. This Court will affirm the State Appraiser's decision as to fair market value if the findings were rationally drawn from the evidence and were based on a correct interpretation of the law. *Id.* ¶ 5. Absent compelling indica-

tion of error, interpretations of statutory provisions by agencies entrusted to administer them will be sustained on appeal. *Id.*

¶ 8. In relevant part, the rubric of property tax assessment is also easily explained. Simply stated, property tax assessments must be based on the fair market value of property. 32 V.S.A. § 3481(1); *Barrett*, 2005 VT 107, ¶ 6. The fair market value of property is, in turn, based on the highest and best use of the property. *Scott Constr., Inc. v. City of Newport Bd. of Civil Auth.*, 165 Vt. 232, 235, 683 A.2d 382, 383 (1996) (interpreting "potential and prospective" in 32 V.S.A. § 3481(1) as requiring the appraiser to determine the highest and best use of the property). The fair market value accounts for the property's availability, use, and other elements which combine to give the property a market value. *Barrett*, 2005 VT 107, ¶ 6. Although this may include consideration of "intangibles associated with the realty, such as zoning, permits, and licenses," *Am. Sheds, Inc. v. County of Los Angeles*, 78 Cal. Rptr. 2d 58, 62-63 (Ct. App. 1998), cited with approval in *Barrett*, 2005 VT 107, ¶ 9; see also *Roehm v. Orange County*, 196 P.2d 550, 554 (Cal. 1948) (en banc) (holding that some intangibles are intertwined with property such that the value of the intangible asset is not severable from the value of the property for the purpose of tax assessment), cited with approval in *Barrett*, 2005 VT 107, ¶ 9, the mere existence of uncertainty in the regulatory process does not bar consideration of development potential. *Scott Constr.*, 165 Vt. at 236, 683 A.2d at 384.

¶ 9. On appeal, taxpayers do not specify the discount they seek. In light of ZSD's arguments before the State Appraiser, however, we interpret taxpayers' leading argument to be that the appraiser erred as a matter of law by not discounting the fair market value of their property to $0. This argument is wholly without merit. As

noted, we have held that regulatory uncertainty does not bar the appraiser from considering development potential in determining fair market value. *Id.* The highest and best use of property, upon which fair market value is based, is determined with the aid of legal and market assumptions about the reasonable future uses of the property. *Id.* In this case, the State Appraiser found that the highest and best uses of Karl and Jane's, and ZSD's parcels were, respectively, as a single-family residence and a residential subdivision. Taxpayers' counterargument — that their property "should have been appraised on par with [property] on which a conservation easement bars development, for example" is self-defeating. Taxpayers would have to argue that the property was and would remain completely useless — or, in other words, that there was no highest and best use — to square their total-discount argument with the law of fair market value. In light of the forward-looking nature of the highest-and-best-use inquiry, it would be nonsensical to assume that the subject property was rendered completely valueless, even if adversely affected by outstanding permit requirements. As a matter of law, therefore, we agree with the State Appraiser that the argument that fair market value should be discounted to $0 is "totally unreasonable." The goal of property-tax appraisal is, after all, to ensure that property owners pay a fair share of the tax burden. *Barnett v. Town of Wolcott,* 2009 VT 32, ¶ 4, 185 Vt. 627, 970 A.2d 1281 (mem.). To hold that the properties in this case were completely valueless would circumvent this goal, would be a windfall for taxpayers, and would create incentives to strategically delay permitting processes to avoid tax liability.

¶ 10. We construe taxpayers' second argument on appeal to be that the State Appraiser erred by not implementing some discount that would have resulted in a valuation between the current assessment and $0. Indeed, an Act 250 permit may have value in the property valuation context. See *Giorgetti v. City of Rutland,* 154 Vt. 9, 13-14, 572 A.2d 933, 935-36 (1990) (considering the added value of an Act 250 permit for purposes of determining fair market value of property); see also *Barrett,* 2005 VT 107, ¶ 9 (citing with approval the rule that some intangibles associated with realty, such as zoning, permits, and licenses may be properly considered in a property tax assessment). Taxpayers, however, do not contest the State Appraiser's findings that they offered no evidence as to what discount would be appropriate. We will not fault the State Appraiser for refusing to pick a figure out of thin air. Once the City produced evidence as to fair market value below, it became taxpayers' burden to prove the discount, see *Barrett,* 2005 VT 107, ¶¶ 7-8, and they simply failed to do so.

*Affirmed.*