2010 VT 67

**Paul A. BOIVIN and Mark A. Boivin d/b/a No-Mon-Ne Farm Associates v. TOWN OF ADDISON**

[5 A.3d 897]

No. 07-107

¶ 1. June 29, 2010. Taxpayers appeal the de novo decision by the Addison Superior Court establishing the listed values for the year 2003 of three parcels of real property located in Addison, Vermont. We affirm.

¶ 2. Taxpayers are brothers who own three parcels of land that are part of an integrated dairy farming operation in Addison. Parcel 1 consists of 289 acres and includes a dwelling as well as numerous farm buildings; Parcel 2 consists of 98 acres of open land; and Parcel 3 consists of 80 acres of open land. In its 2003 grand list, the Town assessed Parcel 1 at $379,521; Parcel 2 at $113,949; and Parcel 3 at $89,299.

¶ 3. Taxpayers disputed the Town's valuations as too high and sought relief first from the Addison Board of Civil Authority, who affirmed the grand list values, and then from the superior court pursuant to 32 V.S.A. § 4461(a). The superior court conducted a de novo hearing on the matter in February 2006, in which the

Town offered testimony from licensed real estate appraiser, Michael O'Brien, who testified as to the appraisal methods used in arriving at the three valuations as well as testimony from Town lister, Richard Pratt, who testified as to the methods used in arriving at an equalization rate. Taxpayer Mark Boivin testified with regard to his own opinion as to the appropriate equalization method and contended that using his method yields values that are lower than those arrived at by the Town. The court ultimately rejected Boivin's asserted method and instead credited the values and methods presented by the Town's appraiser and the Town lister.

¶ 4. The court issued a written decision on December 8, 2006, in which it adopted the sales comparison approach to valuation before "determin[ing] anew, the correct value of the property at issue." See *id.* § 4467. The court determined the listed values as follows: $451,758 for Parcel 1; $105,254 for Parcel 2; and $78,948 for Parcel 3. This appeal followed.[1]

_____

[1] We note that this appeal was stayed pending resolution of taxpayers' federal suit. The federal district court dismissed the case, holding that: (1) as plaintiffs, taxpayers were not entitled to remove the case to federal court; (2) because the Vermont Supreme Court had not yet heard the case, the federal court had no jurisdiction over taxpayers' requests for injunctive or declaratory relief; and (3) because state courts provide taxpayers with adequate remedies for both their state and federal claims, taxpayers' claims for damages are barred by the federal Tax Injunction Act. *Boivin v. Town of Addison*, No. 2:08-CV-66, 2008 WL 2787345, at **3-5 (D. Vt. July 15, 2008). The United States Court of Appeals for the Second Circuit affirmed the dismissal for lack of federal jurisdiction. *Boivin v. Town of Addison*, No. 08-3977-

¶ 5. Taxpayers present several arguments on appeal: (1) the trial court's findings were without evidentiary support because the court should have given more weight to Boivin's testimony regarding the appropriate valuation analysis; (2) the assessment of taxpayers' property was an arbitrary assessment and the result of "sales chasing" in violation of taxpayers' constitutional rights; (3) the Town's arguments in support of its assessment should have been foreclosed based on the doctrine of "judicial estoppel"; (4) the trial court erred in refusing to issue findings on the formulas the Town's appraiser used to assess the value of properties in which development rights have been sold or the land schedule used for assessments in previous years; and (5) the trial court erred by accepting the Town's appraiser's updated report.

¶ 6. We begin with the appropriate standard of review. Upon appeal of a tax determination from a board of civil authority, the trial court "shall proceed de novo and determine the correct valuation of the property." 32 V.S.A. § 4467. "If the . . . court finds that the listed value of the property subject to appeal does not correspond to the listed value of comparable properties within the town, the . . . court shall set said property in the list at a corresponding value." *Id.* We will uphold the trial court's findings of fact unless they are clearly erroneous, and "we will affirm its conclusions where they are reasonably drawn from the evidence presented." *Dewey v. Town of Waitsfield*, 2008 VT 41, ¶ 3, 184 Vt. 92, 956 A.2d 508; see also *Kachadorian v. Town of Woodstock*, 149 Vt. 446, 448-49, 545 A.2d 509, 510-11 (1988). We note that we defer to the trial court's determinations with regard to evidentiary credibility, weight, and persuasiveness. See *Scott Constr., Inc. v. City of Newport Bd. of Civil Auth.*, 165 Vt. 232,

_____

cv, 2010 WL 537720 (2d Cir. Feb. 17, 2010).

237, 683 A.2d 382, 385 (1996) (noting that in appeal of tax assessment, court is "free to weigh any competent, relevant, and probative evidence of valuation"); *Harte v. Town of Bennington*, 153 Vt. 256, 258, 571 A.2d 53, 54 (1989) (noting that persuasiveness of testimony in tax appeal is for court to determine). Moreover, we have upheld the "use of any or all methods" or combination of methods that results in a rational determination of fair market value. *Lake Morey Inn Golf Resort, Ltd. P'ship v. Town of Fairlee*, 167 Vt. 245, 248-49, 704 A.2d 785, 787 (1997). Thus, the burden is on the appellant to demonstrate that the court's exercise of discretion was clearly erroneous. *Id.* at 248, 704 A.2d at 787.

¶ 7. Whether a property's listed value for tax purposes corresponds to the listed value of comparable properties within a town involves a two-step process:

> First, the fair market value of the property must be determined. Next, the fair market value must be "equalized" to insure that the property is listed comparably to corresponding properties in town. When comparable properties exist, their current market value must be compared with their current listed value to arrive at an equalization rate. This rate must then be applied to the subject property's fair market value to produce the proper listed value.

*Kachadorian v. Town of Woodstock*, 144 Vt. 348, 350-51, 477 A.2d 965, 967 (1984) (citations omitted). Taxpayers challenge the trial court's analysis at both steps.

¶ 8. Taxpayers first argue that the trial court's findings, which credited the Town's appraiser's methods and conclusions, were not supported by the evidence. In support of this argument, taxpayers appear to challenge the appraiser's credibility, arguing that he is not competent to appraise dairy farms. We disagree.

¶ 9. The court relied on testimony from and the appraisal report submitted by the Town's appraiser. The appraiser adopted the sales comparison approach "in which a value indication is derived by comparing the property being appraised to similar properties that have been sold recently, applying appropriate units of comparison, and making adjustments to the sale prices of the comparables based on the elements of comparison." For each of the three parcels in question, he compared the subject property to sales of three comparable parcels in Addison or surrounding towns. He then adjusted the value for the subject parcels based on factors such as residential improvements, the existence of dairy farming equipment and buildings, and access to, location, and size of the land. He arrived at a fair market value of: $515,000 for Parcel 1; $120,000 for Parcel 2; and $90,000 for Parcel 3. The trial court concluded that this was a rational, logical, and fair way to arrive at a fair market value, and we note again that the trial court's evidentiary credibility determinations will be upheld absent an abuse of discretion. See *Scott Constr.*, 165 Vt. at 237, 683 A.2d at 385. The mere fact that the Town's appraiser is not himself a dairy farmer is not enough to show an abuse of the trial court's discretion in crediting his testimony and report.

¶ 10. Taxpayers also argue that the trial court erred in failing to credit their "regression analysis" calculations over the analysis employed by the Town's appraiser to arrive at an accurate fair market value for the three properties. At trial, taxpayers argued that regression analysis — a technique used to estimate property value by comparing individual sales across numerous variables — was the appropriate method to determine the fair market value of the three properties. In support of this type of analysis, taxpayers

offered appraisal manuals, which discussed the benefits of this analysis, as well as testimony from an economics professor who testified that a regression analysis would yield a more accurate fair market value for the subject properties here. Taxpayers, however, used only two variables in their regression analysis: (1) gross residential square footage; and (2) gross acreage. Further, taxpayers analyzed these variables across only two sales. On the other side, the Town's appraiser testified that regression analysis was not used in Vermont and testified that though such an analysis might be useful when comparing a number of units, in, for instance, a condominium building, this type of analysis was not well suited to compare a small number of farms.

¶ 11. The heart of taxpayers' argument goes to the credibility determinations made by the trial court as to the appropriate analysis to calculate fair market value, and we will not disturb this determination on appeal. See *State Hous. Auth. v. Town of Northfield*, 2007 VT 63, ¶ 10, 182 Vt. 90, 933 A.2d 700 (noting that where property owner testified as to her opinion regarding the correct appraised value, evaluation of property owner's knowledge of properties in issue, as well as a determination as to her credibility, was within discretion of hearing officer). Here, the trial court found the Town's appraiser's testimony more compelling than taxpayers' testimony with regard to the appropriate appraisal method. This determination appears to have been based on the relative experience and expertise of these two witnesses as well as the more robust analysis across a variety of factors employed by the Town's appraiser as compared to the limited analysis across only two factors employed by taxpayers. See *SPX Corp. v. County of Steele*, No. C1-00-350, 2003 WL 21729580, at *7 (Minn. Tax Ct. July 23, 2003) (rejecting use of regression analysis as basis to overturn appraisal, noting that "be-cause multiple regression analysis is not widely accepted within the appraisal community and because of problems with data used as a basis for the analysis," no weight should be given to multiple regression analysis employed by the taxpayer); *Builders Serv. Corp. v. Planning & Zoning Comm'n of East Hampton*, 545 A.2d 530, 537 n.8 (Conn. 1988) ("The most important issue in a regression analysis is what factors should be included as the independent variables. . . . There is little question that courts must carefully evaluate all the assumptions and data underlying the statistical analysis to determine whether they are sufficiently related to reality to provide any useful information to the court." (quotations omitted)). The court's decision to credit the Town's appraiser's approach, therefore, was not clearly erroneous. Moreover, the mere fact that Boivin offered a different type of analysis to arrive at a fair market value is not enough to overturn the trial court's choice to credit the Town's appraiser's method instead. See, e.g., *State Hous. Auth.*, 2007 VT 63, ¶ 5 ("[A]ny valuation method resulting in a rational determination of fair market value will survive scrutiny.").

¶ 12. Next, taxpayers challenge the equalization rate employed by the Town and adopted by the trial court. As stated above, the second step in an appraisal is equalizing the property's fair market value with those of other comparable properties. Vermont listers are required to list fair market values for all taxable property each year and to submit the municipality's grand list to the director of the division of property valuation and review (PVR). 32 V.S.A. § 5404(b). By April 1 of each year, the Commissioner of Taxes determines the equalized education property tax grand list and coefficient of dispersion for the previous year for each municipality in the state. *Id.* § 5405(a). A "common level of appraisal" (CLA) — expressed as a percentage — is then

calculated by ascertaining "the ratio of the aggregate value of local education property tax grand list to the aggregate value of the equalized education property tax grand list." *Id.* § 5401(3). PVR reaches this percentage by collecting sales data (through submission of a property transfer tax return with the Department of Taxes on every real property conveyance), working with town listers to eliminate sales that do not represent market value (e.g., sales that are not arms-length transactions, such as those between family members), calculating the listed-value-to-sales-price ratios for all market sales, and applying these ratios to the grand list.

¶ 13. Here, the Town employed a CLA of 87.72%, which it derived from a 2002 equalization study conducted by PVR. The trial court adopted this CLA in its own determination. Taxpayers argue, however, that the court erred by accepting this rate because it was the result of improper "sales chasing" (a form of selective reassessment) resulting in an arbitrary assessment in violation of taxpayers' constitutional rights.

¶ 14. Sales chasing is defined in the Vermont Department of Taxes Listers' Handbook as "[t]he practice of adjusting an individual property's appraised value to the value reported in a recent sales transaction for that parcel (or the sale price adjusted by the common level of appraisal)." The Handbook notes that this type of selective reassessment is "not an acceptable assessment practice" because it "greatly undermines the overriding concern of equity by creating a dual system of valuation: one for newcomers to a neighborhood and one for existing owners." Taxpayers claim that the 2002 equalization study (which is the basis for the equalization rate used for the April 1, 2003 assessment that is the subject of this appeal) was the result of selective assessment of seventeen properties listed in the Town's equalization study based solely on the occurrence of a sale of these properties.

¶ 15. The trial court — after hearing testimony from a Town lister, from Mark Boivin, who acted as his own expert witness, and from taxpayers' proffered expert, the economics professor — rejected this argument. On the issue of sales chasing, the lister testified that it is not the practice of town listers to change the grand list assessed value of a property simply because the property was sold. Instead, the lister testified that, other than when the Town undergoes a town-wide reappraisal, listers typically make changes to listed values when property owners acquire building permits or make improvements to the property, if the amount of property changes because a portion of land is bought or sold, or if development rights to a property are sold.

¶ 16. Importantly, the lister rebutted taxpayers' claims with regard to the seventeen assessment values in the Town's 2002 equalization study, which taxpayers alleged were changed following property sales. He testified that of the seventeen property assessments cited by taxpayers as evidence of "sales chasing," eleven were actually the result of a land sale from a larger parcel, necessitating a change in the valuation of the property to reflect the lesser acreage.[2] Of the remaining six transactions cited by taxpayers,

_____

[2] In their reply brief, taxpayers imply that some of these sales should not have been included in the equalization study because they were the result of sale of a subdivision. According to the Vermont Department of Taxes Listers' Handbook, the reasoning behind excluding the sale value of parcels that were recently subdivided in the most recent equalization study is because there is no listed value which corresponds with the property as it existed at the time of sale. Taxpayers, however, have failed to specifically iden-

the lister testified: one value was lowered because of the property's long exposure to the market, its landlocked location, and the relative age of the buildings; one value was changed due to a lister error that occurred in 1997 (before the sale of the property), in which the lister failed to take into account the fact that the landowner had sold his development rights; three values were changed following sales that were below list value and after a determination was made to lower the valuation of all of the properties in that particular neighborhood; and the last value was changed because the property in question was conserved and it appeared that the sale price was actually much higher than the listed value. The lister further testified that of these examples, not one was, in his opinion, a result of sales chasing. Instead, he testified that "the listing procedures and practices were fair and equitable to all involved." It was not error for the trial court to credit this testimony and conclude that the reassessments of property in Addison were not the result of arbitrary enforcement or sales chasing; instead, it was entirely reasonable to conclude that any changes in valuations occurred as a result of other, permissible, factors. See *Scott Constr.*, 165 Vt. at 237, 683 A.2d at 385.

¶ 17. Further, it is unclear what remedy taxpayers desire here. Under § 5404(b), towns are statutorily required to submit fair market values to PVR, which then uses these values to arrive at a CLA ratio. There is no indication that the Town here did anything but what it was statutorily required to do — that is, submit its grand list values to PVR. It was, therefore, entirely reasonable for the Town and the trial court to rely on the CLA derived from statewide equalization studies, and taxpayers have offered no reason to suggest otherwise.

tify an instance where that practice has occurred here.

¶ 18. Taxpayers' claim preclusion argument sounding in "the doctrine of judicial estoppel" is similarly without merit.[3] We agree with the Town that the prior litigation cited by taxpayers involved entirely different tax years and, therefore, entirely different assessments. As a result, the Town is not precluded from utilizing a different appraisal report in the instant litigation than it relied upon in the 2000 litigation. Moreover, taxpayers have failed to demonstrate how their reliance on the actions taken by the Town during these prior proceedings has prejudiced them in any way.

¶ 19. Taxpayers next argue that the trial court abused its discretion in denying taxpayers' request to issue findings on whether the Town used a fixed formula to adjust assessment on properties for which development rights had been sold or whether it was appropriate for the

---

[3] Though this Court has not explicitly recognized this doctrine, it appears to rest on basic principles of equity and fairness. The United States Supreme Court has defined it as follows:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

*Zedner v. United States*, 547 U.S. 489, 504 (2006) (quotations and citations omitted).

Town to rely on certain land schedules for its 1996 town-wide reappraisal. Neither of these issues was relevant to the instant matter, and the trial court was well within its discretion in refusing to address them. See *Quirion v. Forcier*, 161 Vt. 15, 21, 632 A.2d 365, 369 (1993) (stating that appealing party has heavy burden to demonstrate that trial court abused its broad discretion in ruling on relevancy or admissibility of evidence).[4]

¶ 20. Taxpayers' final evidentiary claim regarding admission of the Town's appraiser's updated study also fails. Taxpayers take issue with what they perceive to be an inconsistency in a report submitted by the Town during discovery and the report that was relied on by the Town's appraiser during the trial. Taxpayers' argument fails for several reasons. First, the reports differed only in the fact that the pretrial report was based on an *estimate* of the Town's equalization rate, while the report relied on at trial utilized the *finalized* equalization study for 2002, which had been completed after discovery but before trial. Testimony at trial indicated that this final equalization ratio was the same one the Town applied to all changes to the grand list taking effect April 1, 2003. It was, therefore, not error for the Town to rely on the updated, more accurate report at trial.

¶ 21. Moreover, taxpayers raised no objection to any part of the Town's appraiser's testimony at trial. Instead, the first time taxpayers raised this claim was

---

[4] Finally, though the trial court arguably should have ruled on taxpayers' constitutional claims under the United States and Vermont constitutions, we conclude that these claims must fail because, as discussed above, the valuation methods and results reached by the Town and credited by the superior court were reasonable and do not indicate that taxpayers were asked to bear a tax burden that was more than their fair share.

in a post-trial "motion to reconvene." The trial court denied this motion in an order dated February 7, 2007, stating that "[t]he evidence [taxpayers] now seek to introduce was reasonably available at the time of trial, the witnesses could have been asked about it at trial." The crux of taxpayers' evidentiary claim here is that they would have used the discrepancy to impeach the Town's appraiser. This basis alone is not enough to warrant a new trial. See *Coyle v. Hofmann*, 2009 VT 46, ¶ 8, 186 Vt. 525, 974 A.2d 616 (mem.) (noting that a new trial on the basis of newly discovered evidence is warranted only when "evidence was not merely cumulative or impeaching" (quotation omitted)).

*Affirmed.*