2014 VT 80

## Elaine Hoiska v. Town of East Montpelier

[101 A.3d 890]

No. 13-274

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.**

Opinion Filed July 18, 2014

*Elaine Hoiska*, Pro Se, Greenville, New Hampshire, Appellant.

*Bruce Bjornlund*, Waterbury, for Appellee.

¶ 1. **Robinson, J.** Taxpayer appeals from the Vermont State Appraiser's valuation of her property in the Town of East Montpelier. She argues that the appraisal incorrectly treats her property as comprising two contiguous lots under common ownership, and accordingly assigns a higher value to the property than if it were a single developable lot. In particular, taxpayer takes issue with the state appraiser's legal conclusion that she legally subdivided the land in 1978 by procuring a survey, not filed in the land records, that includes a line purportedly dividing the lot into two parcels. We agree that the state appraiser's findings do not support the legal conclusion that taxpayer effectively subdivided her property in 1978, and reverse.

¶ 2. Appellant has not ordered a transcript, so we rely on the factfinder's account of the facts. V.R.A.P. 10(b)(1). Taxpayer owns a 16.2-acre parcel of land in East Montpelier that she acquired in 1977. The property has a home and barn. In 1986, taxpayer recorded a survey of her property with a 1977 certification date and a 1978 revision date. The map included a line subdividing the property into two lots. From 1974 to 1982, the Town's zoning and subdivision regulations both provided that subdivision approval was required only for subdivisions with three or more lots. In 1982, the Town adopted new zoning regulations that required subdivision approval for two or more lots, but the subdivision regulations remained the same. Taxpayer has never applied for or obtained subdivision approval.

¶ 3. In December 2010, the Town sent a letter to landowners, including taxpayer, explaining that it discovered that owners of contiguous lots were not being taxed uniformly. The Town informed owners that starting the next tax year, the Town would assess the principal housesite on all adjoining parcels in common ownership at its full value, and the housesites on the contiguous parcels at one-half of the land schedule's full housesite value. The remaining property would be assessed as bulk land. The letter informed property owners that they could avoid assessment of their property as separate parcels by legally combining the parcels under one deed by April 1.

¶ 4. Taxpayer grieved the listers' initial 2011 assessment, and the listers adjusted the value, assigning a total value to the property of $291,600. Taxpayer appealed to the board of civil authority, which affirmed the Town's valuation. Taxpayer appealed that decision to the state appraiser. Taxpayer initially claimed that the valuation was incorrect because of the slope and condition of the property. She amended her appeal to include an argument that the property was improperly assessed as two parcels because it was not legally subdivided. This eventually became the only basis for her appeal to the state appraiser.

¶ 5. At the hearing before the state appraiser, the Town presented testimony from a lister and the zoning administrator. The state appraiser admitted several exhibits, including the December 10, 2010 letter from the Town listers. Taxpayer testified on her own behalf. Taxpayer testified that a surveyor added the subdivision line to the survey map shortly before the survey was recorded in the land records in 1986. She stated that her intent

at that time was not to subdivide her land but merely to preserve the possibility of subdivision in the future without employing the services of another surveyor.

¶ 6. The state appraiser rejected this testimony and found that the survey was completed and certified in its present form — including the line across the parcel — in 1978. Based on this factual finding, the state appraiser concluded that the survey evidenced a legally valid subdivision of the property as of 1978. The state appraiser rejected taxpayer's argument that the effect of the subdivision line on the map should be determined with reference to the regulations in force in 1986 when the survey was recorded; instead, the state appraiser reasoned that the law in operation in 1978, when the survey was completed in its present form, governed the effect of the survey. Because the law in 1978 did not require any particular action to subdivide one lot into two lots — no applications, approvals, or fees were required — the state appraiser concluded that the completion of a survey alone was sufficient to evidence a subdivision. Because the subdivision was effective as of 1978, the state appraiser reasoned that it was grandfathered as to any subsequent zoning or subdivision regulations, and the Town properly treated taxpayer as owning two contiguous lots. Taxpayer appealed to this Court.

¶ 7. ▮ Vermont law requires property to be assessed at fair market value. 32 V.S.A. § 3481(1); *Allen v. Town of West Windsor*, 2004 VT 51, ¶ 2, 177 Vt. 1, 852 A.2d 627. Fair market value is determined by using the highest and best use of the property, which is "the value of the property for its most profitable, likely, and legal use." *Scott Constr., Inc. v. Newport Bd. of Civil Auth.*, 165 Vt. 232, 235, 683 A.2d 382, 384 (1996) (quotation omitted). Even where land is not subdivided, it may be appraised based on its development value as long as the valuation method is supported by credible evidence. *Id.* at 238, 683 A.2d at 385 ("Testimony as to the value of property if subdivided is generally admissible on the issue of fair market value as evidence of the highest and best use of that land."); see 16 E. McQuillan, The Law of Municipal Corporations § 44:147 (3d ed. 2014) (explaining that purpose of assessment is to ascertain "true value" of property by considering all factors that affect value, including "the use to which the property may profitably be put").

¶ 8. ▮ In determining the highest and best use of property, a town may assess a parcel as including multiple house sites where

the owner has subdivided the property into separate lots. See *Lathrop v. Town of Monkton*, 2014 VT 9, ¶ 10, 195 Vt. 564, 91 A.3d 378 (explaining that development potential of lot is an important factor in setting value). In *Lathrop* we held that a town's valuation of a parcel as if it included two house sites was reasonable where the parcel had been subdivided by permit because the permit provided evidence that subdivision was financially feasible and would result in the highest and best use of the land. *Id.* ¶ 14. Here, the Town is casting a wider net than Monkton did in the *Lathrop* case, as Monkton limited its assessment for multiple house sites to properties for which the owner had obtained a subdivision permit. Taxpayer has not challenged the Town's valuation methodology; rather, she argues that her land was not legally subdivided and therefore the Town erred in assessing it as if it was.

¶ 9. On appeal, we "will set aside the state appraiser's findings of fact only when clearly erroneous." *Barnett v. Town of Wolcott*, 2009 VT 32, ¶ 5, 185 Vt. 627, 970 A.2d 1281 (mem.). In this case, where the appellant taxpayer has not ordered a transcript, we cannot review claims that the state appraiser's findings are not supported by the evidence. V.R.A.P. 10(b)(1).* Where the state appraiser's valuation is supported by some evidence from the record, "the appellant bears the burden of demonstrating that the exercise of discretion was clearly erroneous." *Garilli v. Town of*

---

* For this reason, we do not address taxpayer's argument that the state appraiser erred in finding as a matter of fact that the line upon which the claimed subdivision is based was drawn in 1978 rather than in 1986, as she testified. Taxpayer did not order a copy of the transcript from the proceedings before the state appraiser, and we therefore cannot review the testimony — including taxpayer's — concerning the inclusion of the line on the survey. Without the transcript, taxpayer is unable to challenge the state appraiser's finding that the survey in its present form was completed in 1978, and we cannot conclude that the state appraiser erred with respect to this finding. See V.R.A.P. 10(b)(1); see also *In re S.B.L.*, 150 Vt. 294, 297-98, 553 A.2d 1078, 1081 (1988) (failure to order transcript waives any challenge to sufficiency of court's findings). For the same reason, we also decline to consider taxpayer's argument that the zoning administrator's testimony was insufficient to establish that in 1978 no particular action was required to subdivide property into two lots. Taxpayer claims that the addition of the handwritten notation "1974" to an exhibit, after it was admitted, but before it was photocopied, was also error. In the decision, the state appraiser acknowledged taxpayer's objections concerning the regulation and explained that the notation was consistent with the zoning administrator's testimony that the regulations encompassed in the exhibit became effective in 1974 and remained in effect in 2009. In the absence of a transcript, we accept the court's findings on these points.

*Waitsfield,* 2008 VT 91, ¶ 9, 184 Vt. 594, 958 A.2d 1188 (mem.) (quotation omitted). We review statutory interpretations and questions of law concerning matters not within the state appraiser's purview de novo. See *In re Albert,* 2008 VT 30, ¶ 6, 183 Vt. 637, 954 A.2d 1281 (mem.) (explaining that while this Court gives deference to agency interpretations of statutes under their administration, this Court gives no deference on general principles of law); *Barrett v. Town of Warren,* 2005 VT 107, ¶ 5, 179 Vt. 134, 892 A.2d 152 (applying deferential standard of review to interpretation of statute within agency's area of expertise).

¶ 10. Taxpayer argues that simply drawing a line on a survey map was insufficient to subdivide the property. The state appraiser found that the property was subdivided in 1978 because the survey completed in 1978 included a line dividing two lots, and the Town's regulations in 1978 did not require any special action to effectively subdivide. We accept the state appraiser's finding that neither the Town's zoning regulations nor the subdivision regulations required any approval for the subdivision of property into less than three lots. The legal question, then, is whether under those circumstances the completion of a survey that includes a subdivision line, without more, automatically effects a subdivision.

¶ 11. ■ We conclude that it does not. A privately contracted survey could reflect a hypothetical internal division line. It could be a tool for future subdivision. The property owner could reject the division line reflected on the survey in favor of a different one, or could opt to subdivide into smaller or larger pieces. Even in the absence of specific town requirements for subdivisions of property, a survey alone, unaccompanied by any evidence manifesting an intent by the owner to actually subdivide along the lines reflected in the survey, does not effectuate a subdivision.

¶ 12. ■ The intention to subdivide can be manifested in many ways, including by recording the survey reflecting the subdivision, building on one or both subdivided lots, conveying one or both subdivided lots, offering to sell one or more subdivided lots, or otherwise expressing an intention to prospectively treat the lots as separate. However, the mere preparation of a survey reflecting two lots, by itself, is not enough. See *Atkins v. Deschutes Cnty.,* 793 P.2d 345, 346 (Or. Ct. App. 1990) (holding that property was not "legal lot of record" within meaning of grandfather clause for

minimum lot size simply because it was included in unrecorded survey even though there were no statutory or county requirements governing subdivisions when parcel was surveyed); see also *State ex rel. Brennan v. R.D. Realty Corp.*, 349 A.2d 201, 203-05 (Me. 1975) (stating that where no municipal officer's approval for subdivision was required, subdivision pursuant to plan that had been underway for several years was "in existence" before the effective date of the new statute where the lots were actually surveyed and marked, either by steel pins or regular markers, and were numbered).

¶ 13. ■ The state appraiser's finding that the line was drawn on an unrecorded survey in 1978 does not by itself support the appraiser's conclusion that taxpayer effectively subdivided her property in 1978. Nor does the fact that she subsequently recorded the survey — an overt act that does signal an intent to subdivide and puts others on notice — change our analysis. Taxpayer filed the survey in 1986 at a time when, as found by the state appraiser, the Town's zoning regulations, but not its subdivision regulations, required subdivision approval for subdivisions having two or more lots. There is no dispute that taxpayer neither requested nor received approval to subdivide. The 1986 filing did not effectively create a subdivision where none existed before.

¶ 14. Because we conclude that the state appraiser erred as a matter of law in concluding that taxpayer had effectively subdivided her property in 1978 solely on the basis of the existence of an unrecorded survey reflecting two lots as of that time, we need not reach taxpayer's alternate argument that because she held her property through only one deed, she should have been exempt from the application of the Town's new appraisal methodology which the Town had indicated would not be applied to taxpayers who legally combined their contiguous parcels under one deed.

*Reversed and remanded for a determination of taxpayer's 2011 assessment viewing taxpayer's property as a single property rather than two contiguous lots.*