STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION

                                                  }
In re Carrigan Waiver and Variance Applications   } Docket No. 38-2-10 Vtec
        (Appeal of Ernst & Supeno)                }
                                                  }

Decision and Order on Appellants' Motion for Partial Summary Judgment

Appellants Barbara Ernst and Barbara Supeno (Appellants) appealed from a January 25, 2010 decision of the Development Review Board (DRB) of the Town of Addison, granting a waiver allowing the construction of an addition to the camp of Applicants John and Linda Carrigan (Applicants).  Appellants are represented by Robert Halpert, Esq.; and Applicants are represented by Andrew Jackson, Esq.  The Town of Addison is represented by Donald R. Powers, Esq., but has not taken an active role on the present motion.

Appellants moved for summary judgment on Questions 1, 2, 3, and 4 of the Statement of Questions: whether the application should be denied because Applicants failed to obtain conditional use approval for the project; whether the application should be denied as an expansion of a non-conforming use; whether § 6.7 of the Town of Addison Zoning Regulations (Zoning Regulations) complies with the provisions of 24 V.S.A. § 4418(8) allowing municipalities to adopt waiver provisions; and whether the application is entitled to a waiver under § 6.7 of the Zoning Regulations.[1]  The following facts are undisputed unless otherwise noted.

Applicants own an existing small lot that is 0.41 of an acre in area, located at

---

[1] All references to either a section number or a table number refer to the Zoning Regulations unless otherwise noted.

1

the shore of Lake Champlain at 16 Fisher Point Road in the Shoreland Residential zoning district of the Town of Addison. The minimum lot size in the district is 2.5 acres, and the minimum lot depth is 200 feet, making the lot a preexisting nonconforming lot as to lot size and lot depth. Zoning Regulations Table 2.3(D), § 3.4; see 24 V.S.A. § 4303(13). The lot is bounded on its westerly side by the lake, on its southerly side by a neighboring lot unrelated to this litigation, and on its northerly side by a narrow right-of-way to the lake. The northerly boundary of the lot measures 151.28 feet; its southerly boundary measures 136.28 feet.

Applicants' easterly boundary adjoins Appellants' property, and Applicants' property holds an easement over Appellants' property for access to Fisher Point Road, a private road running on Appellants' property near Applicants' easterly boundary. The road also provides access to other unrelated parcels farther to the south.

An existing camp (seasonal dwelling) building is located on Applicants' property. It measures 20' x 40' in area and is oriented with the shorter end facing the lake shore. The camp building is set back approximately 69 feet from the mean high water mark of Lake Champlain, so that all but the most easterly nine feet of the existing camp building is located within 100 feet of the lake shore. The camp building is set back well more than 20 feet, but somewhat less than 50 feet, from the property's northerly and southerly boundaries.[2] The easterly face of the camp

---

[2] The term "setback" is defined in §7.2 of the Zoning Regulations as "[t]he horizontal distance from a . . . lot line . . . to the nearest structural element of a building . . . ." The measurements as shown on the portion of the site plan provided as Applicants' Exhibit 4, which are given as 50 feet from the northerly boundary and 51 feet from the southerly boundary, are not shown on the plan as measured perpendicular to the lot lines. Therefore, the actual distance to the closest point on the building is some amount smaller than 50 feet, but, by comparison to the other measured distances on the exhibit, is much more than 20 feet.

building is located approximately 68 feet from the centerline of the Fisher Point Road right-of-way; it is separated from the road by a portion of Appellants' land over which Applicants have an easement.[3] The measurement from the easterly face of the camp building to the easterly boundary of the property is more than 20 feet, as measured by scale from the known measurements on the portion of the site plan provided as Applicants' Exhibit 4.

The Shoreland Residential zoning district requires a setback of 100 feet from the mean high water mark of Lake Champlain, a setback of 20 feet from any side or rear property boundary, and a setback of 75 feet to the centerline of a road. Zoning Regulations Table 2.3(D); § 7.2 (Definition of Setback).

An existing septic system serving the existing camp building is also located on Applicants' property, to the northeast of the camp building. The Zoning Regulations require a setback of 200 feet from the mean high water line of Lake Champlain to any septic system. Id. Table 2.3(D).

In August of 2009, Applicants had applied for a zoning permit to construct a 22′ x 26′ addition to their existing camp building, between the building and the property's southerly boundary. That application was denied on appeal by the DRB. Rather than appealing the DRB's denial to this Court, on October 30, 2009,

---

[3]  Facts have not been provided to the Court by either party as to the width of the Fisher Point Road right-of-way and as to whether Applicants' property adjoins the right-of-way at any point or is entirely separated from it by the property of Appellants over which Applicants have an easement. If Applicants' property does actually adjoin the road right-of-way, the road setback of 75 feet from the camp building to the centerline of the road right-of-way would be applicable, measured from the centerline of the road at any portion of the frontage that adjoins the road; otherwise, the setback would be 20 feet from the easterly property line. If the 20-foot setback is applicable, the property building is complying as to its easterly setback. The lack of this information does not affect the analysis in the present appeal, which relies on the issue of noncompliance with the shoreline setback.

Applicants submitted a new application for a zoning permit. On November 19, 2009, the interim Zoning Administrator referred the application to the DRB for Applicants to apply for a variance or waiver from the shoreline and road setbacks.

The form for filing an application to the DRB allowed Applicants to state, under "Type of Application," whether they were filing an appeal from a decision of the administrative officer, an application for a conditional use permit, or an application for a variance. Applicants checked only the space for "application for a variance," and added in handwriting: "or waiver." Applicants did not apply to the DRB for conditional use approval.

Applicants' project was warned for the DRB meeting on January 4, 2010 as "Variance/Waiver Application #09-40." The notice stated that the hearing was to consider an "[a]pplication for a variance/waiver" and that Applicants "[a]lso desire a building permit to do this." The notice did not warn the hearing for conditional use approval.

The minutes of the January 4, 2010 hearing also characterized the application as "Variance/Waiver Application #09-40" and stated that it must meet the standards for issuance of a variance in § 6.6 of the Zoning Regulations. (By comparison, the matter that followed on the meeting's agenda was a bed-and-breakfast proposal entitled "Conditional Use Permit #09-42," and stating that it must meet the standards in § 5.7 for a conditional use.)

During the meeting, the Interim Zoning Administrator suggested that the DRB might want to consider granting a waiver under § 6.7 instead of a variance under § 6.6. The only mention of conditional use approval in the January 4 minutes is in the context of the Interim Zoning Administrator's explanation as to why a waiver should be considered instead of a variance; that "[i]n order for [Applicants] to obtain a Conditional Use Permit, they would have to meet all of the conditions under [§] 6.6 for a variance, but can't due to it being a small, existing lot." The DRB

4

voted to table the matter until the January 25, 2010 meeting, "since the concept of issuing a waiver in place of [a] variance is new to the [DRB]" The minutes of the January 25, 2010 DRB meeting do not mention conditional use approval at all. The minutes for both meetings reflect that the DRB considered Applicants' application for variance or waiver, and that it did not consider any of the criteria in § 3.7(B)(3) or for conditional use approval under § 5.7. At its January 25, 2010 meeting, the DRB unanimously approved the application for a waiver under § 6.7.

The "resolution of decision" issued on January 29, 2010, granted the waiver, stated that the DRB had determined during deliberation that the project would not be able to meet all of the requirements for a variance under § 6.6 (but did not analyze the variance criteria), and briefly recited that application met the § 6.7 waiver criteria. Appellants appealed the DRB decision granting the waiver in the present appeal. Applicants did not themselves appeal any aspect of the DRB decision, either challenging the DRB's determination that the proposal would not qualify for a variance, or challenging the lack of a DRB ruling on conditional use approval.

Motion for Summary Judgment

A grant of "summary judgment is appropriate when, giving the benefit of all reasonable doubts and inferences to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Gade v. Chittenden Solid Waste Dist., 2009 VT 107, ¶ 7 (citing Mooney v. Town of Stowe, 2008 VT 19, ¶ 5, 183 Vt. 600 (mem.); V.R.C.P. 56(c)).

Questions 1 and 2 of the Statement of Questions: Conditional Use Approval

Applicants' camp does not comply with the applicable shoreline setback and is therefore a noncomplying structure as defined in § 7.2, regardless of whether it is

5

also noncomplying with the front or road setback, see note 3, <u>supra</u>.[4]    A noncomplying structure may be enlarged or expanded (or moved), subject to conditional use review by the DRB, and so long as the change does not increase the degree of noncompliance.   Zoning Regulations § 3.7(B)(3).   Applicants' addition therefore requires conditional use approval from the DRB.

Applicants claim that the DRB considered and granted conditional use approval.  Resp. to Mot. For Partial Summ. J. 6–8.  They have provided an affidavit stating that the Interim Zoning Administrator referred to the application at the January 4 DRB meeting as "com[ing] before you as a Conditional Use Permit" and have provided the written synopsis presented by the Interim Zoning Administrator to the DRB members stating that "the permit would be a conditional use permit and require a variance."  Second Linda Carrigan Aff. ¶ 1; Applicants' Ex. 7.  However, the DRB hearings were not warned for conditional use approval, and the DRB minutes and resolution of decision do not grant conditional use approval.  They do not even discuss the § 5.7(B) standards that the DRB would have to analyze and find to be met in order to grant conditional use approval.  The DRB therefore did not grant conditional use approval for Applicants' project; it only granted a § 6.7 waiver from the shoreline and road setbacks.[5]

---

[4]  Appellants also argue that Applicants' camp is a nonconforming use under § 7.2, applicable to a "<u>use</u>…which does not conform with these regulations."  See also 24 V.S.A. § 4303(15).  However, the use category of "[s]easonal [d]welling ([c]amp)" is a conditional use allowed in the district, Table 2.3(C), making it a conforming use in a nonconforming structure.

[5] In general, statements made orally at a hearing, whether by an applicant, other participants, DRB members, or staff members, do not have a regulatory effect unless explicitly incorporated into the DRB's decision.  See, e.g., <u>In re Kostenblatt</u>, 161 Vt. 292, 297–99 (1994) (rejecting argument that discussion at ZBA hearing, including oral representations by applicant, be considered as findings, and ruling that conditions must be expressly stated in the permit to be binding).

In the present case, although the Zoning Regulations provide for the combined review of projects requiring more than one type of DRB approval, Zoning Regulations § 5.3, nothing requires an applicant to seek such combined review and nothing requires the DRB to hold a combined hearing. That is, an applicant is free to seek required approvals in an appropriate sequence. For example, in the present case, Applicants were free to seek the necessary waiver or variance from the shoreline setback requirements, prior to applying for conditional use approval for expansion of a nonconforming building within that setback.[6]

The Zoning Regulations specifically define "degree of noncompliance" in § 7.2 as

> [t]he extent to which the footprint, height, or total area (volume) of a structure does not comply with the requirements of these regulations. For example, an addition, the installation of a dormer, or an increase in building height within a setback area would increase the degree of noncompliance.

As may be seen from the example specifically given in the definition, Applicants' proposed addition, within a portion of the shoreline setback that previously was open, constitutes an increase in the degree of noncompliance of Applicants' camp

---

[6] Of course, combined review of an application must conform to the same standards of notice for a hearing as for just one type of development review. Id. § 5.3(B). Because neither DRB hearing was warned for conditional use review, the merits of conditional use approval of the project were not before the DRB and hence are not before this Court. See V.R.E.C.P. 5(g); 10 V.S.A. § 8504(h); In re Maple Tree Place, 156 Vt. 494, 500 (1991) (stating that the "court is limited to consideration of the matters properly warned as before the local board" (citing In re Torres, 154 Vt. 233, 235 (1990))); In re: Kibbe Zoning Permit, No. 173-8-07 Vtec, slip op. at 1–2 (Vt. Envtl. Ct. Nov. 6, 2008) (Wright, J.) ("[T]he court sits in place of the [DRB] to consider what was before the [DRB], applying the substantive standards that were applicable before the [DRB].").

building with the shoreline setback. See, e.g., In re: Snelgrove Permit Amendment, Docket No. 25-1-07 Vtec, slip op. at 8 (Vt. Envtl. Ct. July 18, 2008) (Wright, J.) (holding that an increase in the volume of the nonconforming structure located within the setback increased the degree of noncompliance), aff'd, In re Snelgrove Permit, No. 2009-162 (Vt. Jan. 15, 2010) (unpub. mem.); In re: Legrove and Paznokaitis Variance Application, No. 19-1-08 Vtec, slip op. at 6 (Vt. Envtl. Ct. July 15, 2008) (Wright, J.) (holding that new deck occupying additional area of formerly open setback, but not extending any closer to boundary than existing house, increased the degree of noncompliance); In re: Rouleau Property Appeals, Nos. 231-12-04 Vtec, 28-2-05 Vtec, 29-2-05 Vtec, 192-9-05 Vtec, 193-9-05 Vtec, slip op. at 6-7 (Vt. Envtl. Ct. Nov. 17, 2006) (Wright, J.) (holding that relocation of house, causing an area of formerly clear shoreline setback to be occupied by the structure, increased the degree of noncompliance).

In the present case, the proposed addition increases the degree of noncompliance by enlarging the structure into an area of the shoreline setback that previously was open. Applicants therefore first required a variance or a waiver of that setback requirement for the addition, before conditional use approval could be considered for the addition under §§ 3.7(B)(3) and 5.7. The present appeal deals only with that application for waiver or variance.

Accordingly, Summary Judgment is GRANTED in PART on Questions 1 and 2 of the Statement of Questions, in that Conditional Use Approval is also required for this application; however, as the merits of conditional use approval are not before this Court in this appeal, summary judgment is otherwise DENIED and Questions 1 and 2 of the Statement of Questions are otherwise DISMISSED as beyond the scope of this appeal.

8

<u>Question 3 of the Statement of Questions: Compliance of § 6.7 with 24 V.S.A.</u>
<u>§ 4414(8)</u>

Appellants argue that the waiver provision contained in § 6.7 is limited by the state enabling statute authorizing municipalities to adopt waiver provisions, 24 V.S.A. § 4414(8).   Section 4414(8)(A) provides that:

> A bylaw may allow a municipality to grant waivers to reduce dimensional requirements, in accordance with specific standards that shall be in conformance with the plan and the goals set forth in section 4302 of this title.  These standards may:
> (i) Allow mitigation through design, screening, or other remedy;
> (ii) Allow waivers for structures providing for disability accessibility, fire safety, and other requirements of law; and
> (iii) Provide for energy conservation and renewable energy structures.

If a municipality opts to provide for "waivers from dimensional requirements" in its bylaws, § 4414(8)(B) then requires the bylaws to "specify the process by which those waivers may be granted and appealed."

Appellants argue that municipalities may only adopt waiver provisions to reduce dimensional requirements, and argue further that such waivers are further limited to the situations listed in subsections (i), (ii), and (iii) of § 4414(8)(A).   In interpreting statutes, the Court is directed to give effect to the intent of the legislature by first looking to the plain meaning of the statutory language.  See <u>State v. Fletcher</u>, 2010 VT 27, ¶ 10.

The plain language of the statute authorizes municipalities to provide for waivers of dimensional requirements; it does not authorize waivers of any other types of zoning requirements.  However, nothing in the statute limits such waivers to the types of structures listed in the subsections of § 4414(8)(A).  Rather, if a municipality wishes to provide in its bylaws for dimensional waivers, the statute only requires the municipality to adopt specific substantive standards for granting

9

such waivers, and to specify the process for ruling on and appealing such waivers. § 4414(8)(A), (B). The only statutory limitation on a municipality's substantive standards for granting dimensional waivers are that such standards be in conformance with the municipal plan and with the planning goals found in 24 V.S.A. § 4302.

Subsections (i), (ii), and (iii) of § 4414(8)(A) are written in permissive language, using the word "may"; they do not impose any requirements on the standards for dimensional waivers that may be adopted by municipalities. Subsection (i) allows a municipality to include, in its standards for granting dimensional waivers, mitigation through methods such as design or screening. Subsections (ii) and (iii) authorize municipalities to adopt specific standards for granting dimensional waivers for certain special categories of structures providing disability accessibility, fire safety, energy conservation, and renewable energy; they do not limit municipalities in any way.

Section 6.7(A) of the Zoning Regulations allows the DRB to grant "waivers to the requirements and standards of these regulations where specifically authorized," and explains that waivers "are intended to provide additional flexibility" beyond what is provided by variances. Section 6.7(B) provides the standards for granting waivers. Under § 6.7(B)(1), the waiver must not negatively affect the character of the area, must not substantially or permanently impair the use or development of adjacent property, must not reduce access to renewable energy resources, and must not be detrimental to the public welfare. Under § 6.7(B)(2), the proposed waiver must be a reasonable request, and must not result in development or use of property that would "offend the sensibilities of the average person." Sections 5.2, 6.5, and 6.7(C) provide the process by which waivers are to be granted and appealed.

Because the Zoning Regulations provide standards for the grant of waivers and specify the process by which waivers may be granted and appealed, they meet

the requirements of 24 V.S.A. § 4414(8), as long as waivers are not "specifically authorized" in the Zoning Regulations for waivers of other than "dimensional requirements." Zoning Regulations § 6.7; 24 V.S.A. § 4414(8)(A).

Accordingly, summary judgment is DENIED to Appellants and GRANTED to Applicants as to Question 3 of the Statement of Questions.

Question 4 of the Statement of Questions: whether the application is entitled to a waiver under § 6.7

As discussed in the educational materials developed by the Vermont Land Use Education and Training Collaborative after adoption of the 2004 revisions to the state zoning statutes:

> Legislation adopted in 2004 allows municipalities to grant "waivers" to reduce dimensional requirements in accordance with specific standards in the bylaw. [citing 24 V.S.A. § 4414(8)] As envisioned, waivers would be used only to provide relief from dimensional requirements in certain situations spelled out in the bylaws[,] and would permit mitigation of a compliance problem through screening, design, or other remedy.

Vermont Land Use Education & Training Collaborative, Essentials of Land Use Planning and Regulation, 24. On the same page, in discussing variances, the document advises that DRBs "that seek a lower threshold" than the strict variance criteria "for allowing applicants to depart from bylaw requirements should consider adopting waiver provisions, . . ."

The Town of Addison did opt to add a waiver provision to its Zoning Regulations, by adopting § 6.7. Section 6.7 provides that the DRB may grant waivers from the requirements of the Zoning Regulations, using the standards provided in § 6.7(B), "where specifically authorized."

Courts construe zoning ordinances in the same manner as statutes, Appeal of Weeks, 167 Vt. 551, 554 (1998), and seek to avoid a construction that renders any

11

portion of a zoning ordinance ineffective or superfluous. See In re Miller, 2009 VT 36, ¶ 14, 185 Vt. 550. The plain language of § 6.7, limiting the DRB to using waivers only "where specifically authorized," must therefore mean that waivers are specifically authorized elsewhere in the Zoning Regulations, and may only be used in those instances "specifically authorized."

However, although the Town adopted the § 6.7 waiver provision for use in instances specifically authorized in the Zoning Regulations, it did not at the same time, or since that time, amend the Zoning Regulations to add any specific authorization for waivers from setback provisions. The Court has found no specific authorization in the Zoning Regulations for waivers applicable to the shoreline setback, or to any of the setback or dimensional requirements in the Shoreland Residential zoning district. In fact, the only instance in the Zoning Regulations in which waivers have been specifically authorized appears to be in the section governing parking requirements. Zoning Regulations § 3.8(C).

When an ordinance provision is specifically included in one portion of a zoning ordinance, such as for parking waivers in the Addison Zoning Regulations, but is omitted in another, the drafters of the ordinance are presumed to have intended it to be used only where it has been specifically included in the ordinance. See Hopkinton Scout Leaders Ass'n v. Town of Guilford, 2004 VT 2, ¶ 8, 176 Vt. 577 (mem.) (citing In re Munson Earth Moving Corp., 169 Vt. 455, 465 (1999)) (where legislature includes language in one portion of act, but excludes it in another, it is generally presumed that the legislature did so advisedly).

The Zoning Regulations do not provide for waivers from the dimensional requirements that apply to the proposed addition to Applicants' camp; that is, they do not specifically authorize waivers from the shoreline setback requirements, or from dimensional requirements in the Shoreland Residential district, or from setback requirements generally. Accordingly, Applicants are not entitled to a waiver under

the present Zoning Regulations, and summary judgment must be GRANTED to Appellants with regard to Question 4 of the Statement of Questions.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED as follows:

Summary judgment is GRANTED in PART on Questions 1 and 2 of the Statement of Questions, only in that Conditional Use Approval is also required for this application; however, as the merits of conditional use approval are not before this Court in this appeal, summary judgment is otherwise DENIED and Questions 1 and 2 of the Statement of Questions are otherwise DISMISSED as beyond the scope of this appeal.

Summary judgment is DENIED to Appellants and GRANTED to Applicants with respect to Question 3, in that § 6.7 of the Zoning Regulations complies with 24 V.S.A. § 4414(8).

Summary judgment is GRANTED to Appellants with respect to Question 4, in that the present Zoning Regulations do not provide for waivers from the shoreline setback requirements, or from setback requirements generally, and that therefore Applicants are not entitled to a waiver under the present Zoning Regulations.

It appears to the Court that the remaining two questions in the Statement of Questions do not require the evidentiary hearing now scheduled for February 1, 2011, and that the hearing should be cancelled. Please be prepared to discuss this

13

issue at the telephone conference already scheduled for Thursday, January 20, 2010, at 11 a.m.

Done at Berlin, Vermont, this 13th day of January, 2011.

_____
Merideth Wright
Environmental Judge

14